**In re DOW CORNING CORP., Debtor.**

**Bankruptcy No. 95–20512.**

United States Bankruptcy Court,
E.D. Michigan,
Northern Division.

Nov. 20, 1997.

Barbara J. Houser, Craig J. Litherland, Sheinfeld, Maley & Kay, P.C., Houston, TX, David M. Bernick, P.C. Kirkland & Ellis, Chicago, IL, Rozanne M. Giunta, Susan M. Cook, Lambert, Leser, Cook, Giunta & Smith, P.C., Bay City, MI, for Debtor.

Marvin E. Frankel, Kenneth H. Eckstein, Jeffrey S. Trachtman, Kramer, Levin, Naftalis, & Frankel, NY, for Official Committee of Tort Claimants.

Lenard M. Parkins, Anne M. Ferazzi, Verner, Liipfert, Bernhard, McPherson and Hand, Chartered, Houston, TX, for Official Committee of Tort Claimants.

Donald S. Bernstein, Ogden N. Lewis, Lowell Gordon Harriss, Davis, Polk & Wardwell, NY, Shelton S. Toll, Sheryl L. Toby, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Official Committee of Unsecured Creditors.

Dennis S. Meir, Alfred S. Lurey, Kilpatrick, Stockton, L.L.P., for Official Committee of Tort Claimants.

H. Jeffrey Schwartz, Gregory G. Binford, Jeffrey M. Levinson, Benesch, Friedlander, Coplan & Aronoff, L.L.P., Cleveland, OH, Randall L. Frank, Bay City, MI, for Official Physicians' Committee.

Linda C. Scheuerman, Jaffe, Raitt, Heuer & Weiss, Detroit, MI, for Blue Cross(es) and Blue Shield(s) of Alabama, Michigan and Minnesota and Blue Shield of California.

R. Mike Borland, Vi Lea Borland, Borland & Borland, Robert J. Rhead, P.C., Midland, TX, for Group of 86 Silicon Personal Injury Claimants.

D'Juana Parks, Provost* Umphrey Law Firm L.L.P., Beaumont, TX, for Group of 347 Claimants.

*OPINION ON COURT'S AUTHORITY TO DECIDE DOW CORNING CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON ITS OMNIBUS DISEASE OBJECTION TO BREAST IMPLANT CLAIMS*

ARTHUR J. SPECTOR, Bankruptcy Judge.

### Introduction

Since enactment of the 1984 amendments to the Bankruptcy Code and to title 28, there has been a general assumption that "bankruptcy courts do not have jurisdiction to decide personal injury tort claims." *In re Thomas*, 211 B.R. 838, 840 (Bankr.D.S.C. 1997). *See also In re Barker–Fowler Elec. Co.*, 141 B.R. 929, 939 (Bankr.W.D.Mich. 1992); *Pettibone Corp. v. Easley*, 935 F.2d 120, 123 (7th Cir.1991); *In re Patterson*, 150 B.R. 367, 368 (E.D.Va.1993); *In re UNR Indus., Inc.* 45 B.R. 322, 325 (N.D.Ill.1984); *In re Schepps Food Stores, Inc.*, 169 B.R. 374, 377 (Bankr.S.D.Tex.1994); *In re Farley, Inc.*, 146 B.R. 748, 752 (Bankr.N.D.Ill.1992). And ever since the Debtor filed chapter 11 in May, 1995, the Court has broadly hinted that it would never have to decide the ultimate question in the case: Is the Debtor liable to the hundreds of thousands of individuals who allege that they were harmed by the silicone gel produced by the Debtor for use in breast implants?

Yet on April 7, 1997, pursuant to 11 U.S.C. § 502(b) and F.R.Bankr.P. 3007, the Debtor filed what it styled an "Omnibus Disease Objection to Breast Implant Claims," pertaining to those claims which assert that the Debtor's silicone gel caused the claimant a disease. The Debtor contends that these claimants are unable to prove their cases against it because to do so, they would have to prove that silicone gel can cause the diseases which afflict them. This issue requires expert testimony which, according to the Debtor, the claimants cannot produce because no scientifically credible evidence exists to support that testimony.

The question of whether the claimants' experts should be permitted to testify is one that a trial judge must decide as a matter of law. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). And if the experts are not permitted to testify, whether disease claimants will then be able to prove their causes of action against the Debtor is also a question of law. Therefore, in conjunction with its objection, the Debtor filed a motion for summary judgment, pursuant to F.R.Bankr.P. 7056 (incorporating F.R.Civ.P. 56), requesting this Court to disallow all such disease claims.

The motion requests a determination that there is insufficient "scientific evidence or expert opinion testimony admissible under the standards set in *Daubert* ... and its progeny, for the claimants to support a finding, by a court or jury, that it is more likely than not that silicone-gel breast implants ... are ... capable of causing ... disease." Debtor's Motion for Summary Judgment at 1. A ruling in the Debtor's favor would result in the disallowance of the tens of thousands of pending disease claims. Denial of the motion would mean that the disease claims would survive to be resolved through further proceedings or settlement. The merits of the Debtor's motion are not considered in this Opinion. Instead, the issue addressed is whether a bankruptcy court has the authority to grant a dispositive motion which would disallow a claim for personal injuries or wrongful death.

■ At first blush—several subsequent ones as well—we were extremely dubious. After all, the applicable sections of the Judicial Code seem plainly to prohibit bankruptcy judges from deciding the validity of personal injury and wrongful death claims. These provisions read as follows:

(2) Core proceedings include, but are not limited to—

. . .

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12

or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

. . .

(5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b).

The Debtor's argument is that "threshold" issues not addressing the merits of a creditor's claim are qualitatively different; that a bankruptcy court can decide such issues without violating the statutory prohibition in § 157(b)(2)(B). It claimed that "[b]ecause Dow Corning's motion does not ask the Court to liquidate, to estimate, or to try the claims, the personal injury exceptions do not apply." Debtor's Reply Brief at 2.

The Official Committee of Tort Claimants and two groups of personal injury claimants,[1] took the contrary position. They filed objections asserting that the bankruptcy court is prohibited by § 157(b)(2)(B) from exercising jurisdiction over the Debtor's motion.

Before the Bankruptcy Amendments and Federal Judgeship Act of 1984 changed the status quo in this area, there was no issue. Bankruptcy courts, and only bankruptcy courts, had the task of allowing and disallowing claims made against bankruptcy estates administered in those courts. No differentiation existed in the types of claims adjudicated. Nor was this a recent innovation; it was also the law under the Bankruptcy Act, 11 U.S.C. § 101 *et seq.* (repealed).[2] But for reasons not explained in any legislative history, Congress changed this easy-to-use, no-exceptions rule. As part of the 1984 amendments, Congress enacted 28 U.S.C. § 157(b)(5) and § 157(b)(2)(B). It is primarily the latter subparagraph that will occupy us for the rest of this opinion.

## Judicial Interpretations of 28 U.S.C. § 157(b)(2)(B)

Only a handful of cases have discussed the issue of whether a bankruptcy court may dispose of a personal injury claim as a matter of law. Even fewer have decided the issue.

The first case to address the question extensively was *In re UNR Indus., Inc.,* 74 B.R. 146 (N.D.Ill.1987). The debtor had filed objections to 20 personal injury claims, maintaining that it was absolutely immune under the "government contractor specification defense." *Id.* at 147. After the bankruptcy court agreed to hear the objections, the debtor moved for summary judgment. *Id.* But before the hearing, the district court invoked its discretionary authority under 28 U.S.C. § 157(d), and withdrew consideration of the objections from the bankruptcy court. The motion to withdraw was not opposed by the debtor. *Id.* The primary issue before the court was whether it should change venue pursuant to § 157(b)(5) for one of the claims so that the summary judgment motion could be heard by the district court in the district where the claim arose. *Id.*

The court discussed the "[n]ature of UNR's motion" in detail. *Id.* at 148. It explained that if the matter constituted a core proceeding, it should have been addressed to the bankruptcy court. *Id.* at 148 n. 2. The court decided that it was *not* a core proceeding, and was therefore, properly ad-

---

1. Other objections were lodged by the Official Committee of Physician Creditors, and by Blue Cross(es) and Blue Shield(s) of Alabama, Michigan and Minnesota and Blue Shield of California. The Official Committee of Unsecured Creditors argued that the motion was premature.

2. However, under the Bankruptcy Act, there was a curious notion that only a "provable" claim could be allowed. *See generally,* 1 *Collier on Bankruptcy,* ¶ 1.11; 3 *Collier on Bankruptcy* ¶ 63.09 (14th ed.1986). A tort claim which had not been reduced to judgment was said to be the quintessential example of a claim which was not provable. *Id.* at ¶ 63.25. Therefore such a claim was not allowed and, as a consequence, not discharged by the bankruptcy. 11 *U.S.C.* § 35a (repealed) ("A discharge in bankruptcy shall release a bankrupt from all of his *provable* debts . . . ." (emphasis added)). Over time, however, courts figured out ingenious ways to make such personal injury claims "provable" and "allowable" (and therefore dischargeable). 3 *Collier on Bankruptcy* at ¶ 63.25[2].

dressed to the district court. It felt that a finding of immunity would have impacted the claim in the same way as a plenary trial (a liquidation) would have had the claimant lost. In either case, the claimant would "be denied a distribution from the estate." *Id.* at 148. On the other hand, in an estimation, the claim survives, even if it is estimated at zero. Since granting the motion would be closer in practical effect to a liquidation than to an estimation, the court concluded that the motion was, like liquidation for purposes of distribution, not a core proceeding. *Id. See also Schepps Food Stores,* 169 B.R. at 377 ("Regardless of the subjective intent of the parties or this court, the effect of a decision on the limitations issues is undeniable; it would be a final adjudication of the merits of [the claimant's] state cause of action. Therefore this court cannot disallow [the claimant's] claim based on a state statute of limitations defense because to do so would effectively liquidate the claim for purposes of distribution."); *cf. Pettibone Corp.,* 935 F.2d at 123 ("Bankruptcy judges cannot try selected defenses in these [personal-injury] tort cases— as Pettibone asked the bankruptcy judge to do with its limitations defenses—on the authority of § 157(c)(1). The whole case, including defenses of all kinds, goes off to the district judge or the state court.").

A decision representative of the contrary view on this issue is *In re Chateaugay Corp.,* 111 B.R. 67 (Bankr.S.D.N.Y.1990), *aff'd,* 146 B.R. 339 (S.D.N.Y.1992). In that case, 32 personal injury claims filed were filed against the debtor alleging that the debtor's defective product caused them personal injuries. *Id.* at 69. The debtor sought to have the claims disallowed on the grounds that it "did not design, manufacture, or sell" the product. *Id.* As in *UNR,* the debtor also claimed immunity based on the government-contractor defense. *Id.* The claimants argued that the bankruptcy court was without jurisdiction to disallow the claims on either of these grounds because of 28 U.S.C. § 157(b)(2)(B).

The court rejected ·the claimants' argument, reasoning that the process of "allowance or disallowance of claims" is distinct from the process of "liquidation of claims." *Id.* at 75. It noted that its interpretation led

to "judicial economy." *Id.* The court drew support for its holding from 28 U.S.C. § 157(b)(5), which generally requires that personal injury tort and wrongful death claims are to be tried in the district court. *Id.* at 76. The court recalled that "[t]he obvious purpose of the ... [§ 157(b)(5) ] is to prevent bankruptcy courts from trying personal injury ... actions." *Id. at* 76 (quoting *In re Poole Funeral Chapel, Inc.,* 63 B.R. 527, 532 (Bankr.N.D.Ala.1986)). That statute does not limit a bankruptcy court's authority to "summarily dispos[e] of claims which have no basis in law." *Id.* The court explained:

> [A] finding that the claim is subject to disallowance as a matter of law is not tantamount to a determination on the merits of the personal injury tort or wrongful death claim. On the other hand, a threshold finding that the claim is sustainable as a matter of law leaves it open for trial elsewhere for "liquidation or estimation" for purposes of distribution.

*Id.* at 76–77. *See also In re Aquaslide 'N' Dive Corp.,* 85 B.R. 545, 546 (9th Cir. BAP 1987) (consideration of the defense that the debtor did not manufacture the product alleged to cause personal injury constituted "a core proceeding"); *In re Standard Insulations, Inc.,* 138 B.R. 947, 950–54 (Bankr. W.D.Mo.1992).

In affirming *Chateaugay,* the district court expressed "reservations about holding that the Bankruptcy Court ... has subject matter jurisdiction to disallow ... personal injury tort ... [c]laims." *Chateaugay,* 146 B.R. at 343. Despite these misgivings, the district court "concurr[ed] with the Bankruptcy Court's ... [o]pinion in its entirety." *Id.* It also rejected one claimant's alternative argument "that a bankruptcy court may not·allow or disallow any personal injury tort or wrongful death ·claim on nonbankruptcy grounds, but can disallow these claims on such traditional bankruptcy grounds as discharge of a particular debt or untimely filing of a proof of claim." *Id.* at 343–44 (internal quotes omitted). It concluded that the claimant could not articulate any grounds to differentiate the "traditional" from the "nonbankruptcy." *Id.* at 344. Furthermore, it noted that "any effort to so distinguish un-

dercuts [the claimant's] argument that disallowance ... was the equivalent of 'liquidation.'" *Id.*

The Debtor argues that adjudicating defenses, such as a statute of limitations or immunity, to personal injury claims is a permissible exercise of bankruptcy core jurisdiction.[3] Thus, it asks us to follow the path suggested in cases like *Chateaugay*, and to reject contrary authority such as *UNR* and *Schepps Food Stores.*

One might be skeptical of the Debtor's attempt to liken its *Daubert* argument to the legal challenges asserted by the debtors in *Chateaugay* and *Aquaslide*. But in each of those cases, the court granted summary judgment for reasons relating to the claimants' lack of proof. In *Aquaslide,* the court affirmed the bankruptcy court's entry of, what was in effect, a summary judgment for the debtor because "there was no issue of fact regarding whether Aquaslide manufactured the slide in question." 85 B.R. at 547. And whether the defendant is, in fact, the manufacturer of the product alleged to be defective—also at issue in *Chateaugay*—is, of course, an element of the plaintiffs case upon which the plaintiff bears the burden of proof. These cases, therefore, lend support to the Debtor's argument that the Court has authority to rule on its motion.

### Bankruptcy Court Jurisdiction to Adjudicate Claims Generally

The subject-matter jurisdiction of district courts over civil proceedings in bankruptcy is set forth in 28 U.S.C. § 1334(b): "[D]istrict courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." In turn, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). In this district, all matters falling within the scope of § 157(a) "are re-

ferred to the Bankruptcy Judges." E.D. Mich. L.R. 83.1.

The extent of a bankruptcy court's jurisdiction is delineated in §§ 157(b) and (c). The court "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). Conversely, if the pending matter is classified as a non-core proceeding "that is otherwise related to [the] case," jurisdiction is more limited, in that a bankruptcy judge "may hear" but not determine the matter. 28 U.S.C. § 157(c)(1). In the latter case, the bankruptcy judge has the power to "submit proposed findings of fact and conclusions of law to the district court," which will then enter any final orders or judgments after *de novo* review. *Id.* Only if all parties to a proceeding consent may a bankruptcy judge "hear and determine" a non-core proceeding that is "related to" the case. 28 U.S.C. § 157(c)(2).

"An objection to a claim is a contested matter within the meaning of Bankruptcy Rule 9014." 4 *Collier on Bankruptcy* ¶ 502.02[3][b] (15th ed. rev.1997). *See also Aquaslide,* 85 B.R. at 546; F.R.Bankr.P. 9014, Advisory Committee Note. Therefore the Debtor's Disease–Claim Objection commenced a contested matter. This contested matter implicates the Court's responsibility to allow or disallow claims. *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) (*per curiam* ) ("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims ...."") (quoting *Granfinanciera v. Nordberg,* 492 U.S. 33, 58, 109 S.Ct. 2782, 2799, 106 L.Ed.2d 26 (1989)).

For purposes of 28 U.S.C. §§ 1334(a) and 157(b)(1), proceedings "arising in" a case under title 11 are "those 'administrative' matters that arise only in bankruptcy cases....

---

**3.** The Debtor's summary judgment motion does not address defenses to disease claims. Instead, it asserts that the claimants are unable to prove a necessary element of their causes of action. If disallowing claims for technical bankruptcy rea-

sons such as failure to sign the document is at one pole, then deciding the merits of a claim, as the Debtor requests, is at the other, while deciding nonbankruptcy defenses independent of the cause of action is in the middle.

[Such] proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy." *In re Harris Pine Mills,* 44 F.3d 1431, 1435 (9th Cir.1995) (quoting *In re Wood,* 825 F.2d 90, 96–97 (5th Cir.1987)). *See also In re ACI–HDT Supply Co.,* 205 B.R. 231, 234–35 (9th Cir. BAP 1997); *In re Dow Corning Corp.,* No. 95–CV–72397–DT, 1996 WL 511646 at *2 (E.D.Mich. July 30, 1996). The claims-allowance process, which is governed by § 502 of the Bankruptcy Code, is unique to the bankruptcy forum. So while the underlying claim may be based on state law, the process of allowance and disallowance of a claim is generally considered an administrative matter "constitut[ing] a principal constituent of 'arising in' jurisdiction." 1 *Collier on Bankruptcy,* ¶ 3.01[4][c][iv]. See *also Central Maine Restaurant Supply v. Omni Hotels Mgmt. Corp.,* 73 B.R. 1018, 1022 n. 1 (D.Maine 1987); *In re Emerald Acquisition Corp.,* 170 B.R. 632, 640 (Bankr.N.D.Ill.1994); *In re Britt Airways, Inc.,* 169 B.R. 533, 535 (Bankr.D.Del.1994); *In re Haws,* 158 B.R. 965, 969 (Bankr.S.D.Tex.1993); *cf. Evarts v. Eloy Gin Corp.,* 204 F.2d 712, 716 (9th Cir. 1953). Thus, the first prong of the § 157(b)(1) requirement is satisfied.

With respect to the second prong, there is generally no dispute that claims-allowance is a "core proceeding." Section 157(b)(2) expressly lists a number of matters which fall under that rubric. One of those is the allowance or disallowance of claims against the estate. 28 U.S.C. § 157(b)(2)(B). Additionally, bankruptcy law has long recognized that the claims-allowance process is within the exclusive jurisdiction of the bankruptcy court. *Katchen v. Landy,* 382 U.S. 323, 329, 86 S.Ct. 467, 472, 15 L.Ed.2d 391 (1966) ("[T]he expressly granted power to 'allow,' 'disallow' and 'reconsider' claims ... is of 'basic importance in the administration of a bankruptcy estate,' ... [and] is to be exercised in summary [now referred to as core] proceedings...."); *Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939) ("Among ... [a bankruptcy court's] granted powers are the allowance and disallowance of claims.... In such respects the jurisdiction of the bankruptcy court is exclu-

sive of all other courts."); *Lesser v. Gray,* 236 U.S. 70, 74, 35 S.Ct. 227, 228, 59 L.Ed. 471 (1915) ("A bankruptcy court in which an estate is being administered has full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or claim against the estate is based. This is essential to the performance of the duties imposed upon it."); *In re McLaren,* 990 F.2d 850, 853 (6th Cir.1993) (concluding that the claims-allowance process is a core proceeding); *cf. Granfinanciera,* 492 U.S. at 57–59, 109 S.Ct. at 2798–99.

### Bankruptcy Court Jurisdiction Over Tort Claims

As mentioned, the allowance or disallowance of claims against the estate is included in the laundry list of "[c]ore proceedings." 28 U.S.C. § 157(b)(2)(B). But that statute specifically excludes *"the liquidation ... of ... unliquidated personal injury tort ... claims."* This proviso, which we will refer to as the "exclusionary clause," has generated a good deal of confusion. Of particular concern is whether there a difference between "allowance or disallowance" of a claim on the one hand and "liquidation" of a claim on the other.

The two lines of relevant cases have each reached stark and contrasting results. And each line of cases purported to apply the "plain" language of the statute. *Compare Schepps Food Stores,* 169 B.R. at 377 ("By the plain language of section 157(b)(2)(B), a decision on the limitations defense would *not* be a core proceeding") *with Chateaugay,* 111 B.R. at 74. ("[T]he plain meaning of the words employed by Congress in the 1984 Amendments generally governs the judicial interpretation of the statutory provision at issue."). In our view, the language of this statute is not so pellucid that it can be interpreted and applied without careful analysis.

After such analysis, we conclude that a bankruptcy court may enter a final order on a motion for summary judgment disallowing a personal injury claim without running afoul of the "but not the liquidation" clause of § 157(b)(2)(B). In reaching this conclusion, we feel that, overall, *Chateaugay* and *Standard Insulations* provide a better-reasoned

interpretation of 28 U.S.C. § 157(b)(2)(B)'s exclusionary clause.[4]

### Marathon's Lack of Relevance

■ Another distraction which should be dispatched before we commence what we believe is the relevant inquiry is the notion that *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) has anything to do with this issue. The group of 86 "silicone personal injury claimants" relied most heavily on *Marathon* and the argument that this Court's exercise of core jurisdiction over the summary judgment motion would not only be in violation of the statute, but unconstitutional as well. These parties relied on *Schepps Food Stores* and the most egregious misapplication of *Marathon* in this context, the Seventh Circuit's dictum in *Pettibone Corp.*, 935 F.2d at 123.

Let us recall what the *Marathon* case was about. The debtor-in-possession, Northern Pipeline Co., sued Marathon Pipe Line Co. "for alleged breaches of contract and warranty, as well as for alleged misrepresentations, coercion, and duress." 458 U.S. at 56, 102 S.Ct. at 2864. The Supreme Court held that an action for a money judgment based upon a state-law created right brought by a debtor-in-possession (or trustee) against a party who was not a participant in the bankruptcy case cannot be decided by a non-Article III federal judge.

Here, as in *Pettibone Corp.*, the debtor is objecting to a creditor's claim to share in the assets *in custodia legis* the bankruptcy court. *Marathon* did not address and, therefore, did not say that only Article III judges could resolve claims against a bankrupt estate. Accordingly, it ought to be clear that 28 U.S.C. § 157(b)(2)(B) and the other corresponding provisions were not passed to satisfy *Marathon*.

The 1984 amendments were enacted to resolve a number of "problems" aside from the jurisdictional crisis created by *Marathon* some two years earlier. Recall: Consumer creditors lobbied to tighten the screws on consumer debtors. Result: The Consumer Credit Amendments, which included a potpourri of minor and not-so-minor impositions on consumer debtors. Recall: labor unions lobbied to overturn the Supreme Court's then recent decision in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (holding that a debtor-in-possession could reject a collective bargaining agreement). Result: 11 U.S.C. § 1113. Finally, recall: many personal injury attor-

---

**4.** While we ultimately agree with the results in Chateaugay and Standard Insulations, we do not adopt all of their reasoning. For instance, Chateaugay's contention that the exclusionary clause does not even apply to the "allowance or disallowance of claims" portion of § 157(b)(2)(B), see Chateaugay, 111 B.R. at 75, is rejected. The exclusionary clause begins with the words "but not." The unmistakable import of this wording is that the exclusionary clause serves to limit or modify the language which precedes it. Chateaugay's "narrow" interpretation of § 157(b)(2)(B) is wrong. Had Congress intended the exclusionary clause to apply only to the phrase "estimation of claims or interests" there would have been no reason to use the word "liquidation," because the phrase "estimation of claims or interests" pertains only to estimation. If the term "liquidation" is to have any meaning at all in the exclusionary clause, it must be that the clause also serves to modify or limit the "allowance or disallowance of claims" portion of the paragraph.

To conclude otherwise would be absurd for another reason. Section 157(b)(5), which requires that the trial of personal injury and wrongful death claims take place in district court, would also be rendered meaningless be-

cause there would be no restriction on a bankruptcy court's authority to allow or disallow a claim. An interpretation of a statute which renders any of its words superfluous is disfavored. United States v. Nordic Village, Inc., 503 U.S. 30, 35–36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) ("[It is] the settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect.") As a result, it makes more sense to conclude that Congress used the word "liquidation" because it intended the exclusionary clause to also apply to the phrase "allowance or disallowance of claims."

Nor are we impressed by the judicial economy arguments. Congress is not required to write laws which foster efficiency. Indeed, even interpreted in the way Chateaugay and Standard Insulations directs, 28 U.S.C. § 157(b)(2) and correlative amendments to title 28 that pertain to personal injury claims goes far to make bankruptcy administration much less efficient than it was before. However, a bankruptcy court should not attempt to "fix" a statute to make it work more to the court's liking. A statute which can be understood and applied without absurd results needs no construction, even to make it better.

neys confronted the bankruptcy process, some for the first time, in the course of *Johns–Manville* and other asbestos bankruptcy cases. Not enjoying the process, these attorneys lobbied to exempt, to the extent possible, personal injury claims from adjustment in bankruptcy. Result: 28 U.S.C. § 157(b)(2)(B), (O), § 157(b)(5), and § 1411(a).

Is there a constitutional dimension to these latter provisions? No. Would it be constitutional for a bankruptcy court to "hear" and "determine," that is, try a personal injury claim and ultimately deny it without a jury? Of course; that is the way it was done in the past. There is no rational way one could constitutionally distinguish the trial of a contract claim from the trial of a tort claim in a bankruptcy court. *See White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 264–65 (6th Cir.1983). Therefore *Marathon* is not germane to this issue.

This is not to say that Congress could not provide that certain types of claims, or even all claims, in bankruptcy cases must be resolved somewhere other than in a bankruptcy court. Our point is that Congress need not do so to overcome some imagined constitutional objection. Instead, the real issue is what did Congress do in § 157(b)(2)(B)? The process to reach the answer requires statutory, not constitutional, interpretation.

### The Meanings of Allowance and Disallowance

The proper focus is on the words of the statute in question. If "allowance or disallowance" means something different than "liquidation," then what exactly is the difference? And if they are not different, then why did Congress use two different phrases in the very same sentence to mean the very same thing?

Although the Bankruptcy Code does not define "allowance," it does set forth the process for the allowance of claims in § 502. Section 502(a) provides that a proof of claim "filed under § 501 ... is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). What this means is that,

"under § 502(a), a proof of claim ... properly filed pursuant to section 501(a) constitutes *prima facie* evidence of the *validity* and the *amount* of the claim." 4 *Collier on Bankruptcy* ¶ 502.02[1] (emphasis added). However, if an objection to a claim is lodged by a party in interest, "the court, after notice and a hearing, shall determine the amount of such claim ... and shall allow such claim" in the amount determined. 11 U.S.C. § 502(b).[5]

As § 502(b) makes clear, the bankruptcy court must determine the amount of the claim. And, as the Supreme Court has explained, the process of claims-allowance also includes the determination of whether the debtor is liable on the claim—that is, whether the claim is valid. This dual aspect of the claims-allowance process has long been recognized. *Katchen,* 382 U.S. at 329, 86 S.Ct. at 472 ("This power to allow or disallow claims includes 'full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or a claim against the estate is based.'") (quoting *Lesser,* 236 U.S. at 74, 35 S.Ct. at 228); *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 170, 67 S.Ct. 237, 243, 91 L.Ed. 162 (1946) ("[T]he threshold question for the allowance of a claim is whether a claim exists.... If there was no valid claim before bankruptcy, there is no claim for a bankruptcy court either to recognize or to reject."); *Pepper,* 308 U.S. at 305, 60 S.Ct. at 244 ("[A] bankruptcy court has full power to inquire into the validity of any claim asserted against the estate and to disallow it if it is ascertained to be without lawful existence."). *See also In re Enyart,* 509 F.2d 1058, 1061(6th Cir.1975) (recognizing that the process of allowance or disallowance includes determining the legal validity of a claim against the debtor). After analyzing § 502(b) in conjunction with Supreme Court precedent, it is clear—and the Court therefore concludes -that the process of claims-allowance includes a determination of both the validity of a pending claim as well as its value. In other words, the § 502(b) process of claims-allowance has two parts; it "deter-

---

5. There is a third way in which a claim can be allowed. Section 502(c) provides that when "the fixing or liquidation of [an unliquidated claim]

... would unduly delay the administration of the case," the court can estimate such claim for the purpose of allowance. 11 U.S.C. § 502(c).

mines both the liability of a debtor and the amount of the claim." 4 *Collier on Bankruptcy* ¶ 502.01.

### The Meaning of Liquidation

█] Like the term "allowance," "liquidation" is not defined in the Bankruptcy Code. The only case interpreting 28 U.S.C. § 157(b)(2)(B) that attempted to define "liquidation" was *Standard Insulations*. Examining what constitutes a liquidated claim first, the court stated that "[a] claim is liquidated when it is capable of ready determination of how much is due." *Standard Insulations*, 138 B.R. at 953–54 (citing *In re Loya*, 123 B.R. 338, 341 (9th Cir. BAP 1991)). This statement strongly suggests that the question of whether a claim is liquidated hinges on whether the value of the claim can be determined, irrespective of whether the debtor's liability for such claim (i.e., the legal validity of the claim) is in dispute.[6]

Since liquidation is not defined by the Bankruptcy Code, the next step is to determine if its meaning can be derived from established bankruptcy law. The terms "liquidation" and "unliquidated" are used in § 502(c), which provides that a court "shall estimate[ ] for purpose of allowance ... any contingent or unliquidated claim, the fixing or liquidation of which, ... would unduly delay administration of the case." Cases interpreting § 502(c) have not precisely defined the term "liquidation." However, courts have generally recognized that estimation of a claim is not appropriate or necessary unless the claim in question is unliquidated. *In re Continental Airlines*, 981 F.2d 1450, 1461 (5th Cir.1993) (citing *In re Ford*, 967 F.2d 1047, 1053 (5th Cir.1992)); *In re*

*Audre, Inc.*, 202 B.R. 490, 491 (Bankr. S.D.Cal.1996); *In re Keenan*, 201 B.R. 263, 264 (Bankr.S.D.Cal.1996); *In re Rhead*, 179 B.R. 169, 172 (Bankr.D.Ariz.1995). Each of these cases concluded that a claim is "liquidated" if its value is capable of ready computation. *Audre*, 202 B.R. at 492–93; *Keenan*, 201 B.R. at 265–66; *Rhead*, 179 B.R. at 172. The legal validity of a claim was only truly at issue in two of these cases, and in both the court held that a dispute as to legal validity was irrelevant to determining whether the claim was liquidated. *Audre*, 202 B.R. at 493; *Keenan*, 201 B.R. at 266.

Reference to a "liquidated claim" is found in several provisions of the Bankruptcy Code. *See, e.g.*, § 101(5) (defining "claim" as a "right to payment, whether or not such right is ... liquidated ... [or] unliquidated"); § 101(18) (providing that debtor only qualifies as "family farmer" if a certain percentage of "liquidated debts" derive from farming operations); § 101 (51 A) (defining "single asset real estate"); § 101(51C) (defining "small business"). One provision of the Bankruptcy Code, in particular, has produced a considerable amount of litigation over the meaning of a liquidated claim or debt.[7]

What follows now is a lengthy discussion of the term "liquidated" in the context of § 109(e) of the Bankruptcy Code—a statute that one would think would have absolutely no relevance to this dispute, or for that matter, to this chapter 11 case. However, as was suggested at a recent hearing, sometimes in a case as large as this one, it is easier to get a handle on an issue by hypothesizing the proposed rule of decision in a simpler, smaller case. If the principle is

---

**6.** However, the court in *Standard Insulations* perhaps muddied the water a bit with its next statement—"Liquidation involves weighing evidence of liability and damages to determine with certainty a monetary sum sufficient to compensate a claimant for injuries." *Id.* at 954. Did the court mean to suggest that the liquidation of a claim also involves a determination of the debtor's liability on that claim or simply that when determining the value of a claim a court should consider all pertinent evidence?

A review of *Loya*, the sole case upon which *Standard Insulations* relied for its definition of liquidation, suggests that it is the latter possibility that is more likely correct. In *Loya*, the court

stated that "whether a debt is liquidated ... depend[s] ... on ... whether it is capable of ready computation.... [W]hether a debt is liquidated does not depend on whether it is disputed. Thus a disputed debt which is capable of ready determination is liquidated." 123 B.R. at 340–41. But since this issue is the linchpin in the Court's decision, further consideration of the precise meaning of "liquidation" when used in this context is prudent.

**7.** We use the terms "claim" and "debt" interchangeably throughout this opinion because, as will be discussed, *infra* p. 357, the two terms have the same meaning in bankruptcy.

sound there, it is likely to be sound in the mega-case as well. And although we apologize for the length of the discussion, we feel that the depth of analysis is justified. Obviously, the terms "liquidation" and "liquidated" are closely related. The suffix "-ion" connotes an act or process. *Webster's Ninth New Collegiate Dictionary* 638 (1985). So "liquidation" must mean the act or process of making a claim "liquidated." Therefore we now analyze the term "liquidated" in the context of § 109(e), with the goal of drawing a rule to be applied in the context of 28 U.S.C. § 157(b)(2)(B).

Section 109(e) provides that, to be eligible for chapter 13 relief, the total "liquidated" debts owed by a debtor must be less than the statutorily provided limit. There is unanimous agreement that "a claim is liquidated if its amount is readily ascertainable." *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 754 (6th Cir.1985). The disagreement arises over the issue of whether a claim is liquidated when its value is readily ascertainable, but its legal validity is in dispute.

The only cases that hold that a debt is unliquidated if there is a bona fide dispute as to the underlying liability of the debtor are *In re Lambert*, 43 B.R. 913, 921 (Bankr. D.Utah 1984) and *In re Hustwaite*, 136 B.R. 853, 855 (Bankr.D.Or.1991) ("Any [non-frivo-

lous] disagreement as to liability [which is not solely one of law] ... render[s] a claim unliquidated.").[8]

With the exception of *Lambert* and *Hustwaite*, the cases in the minority camp involved situations where the amount of the disputed debt was not readily ascertainable.[9] The overwhelming majority of cases have assigned a narrower meaning to liquidated debt. These cases hold that a liquidated debt is one that "has been made certain as to amount due by agreement of the parties or by operation of law" and that "the concept of a liquidated debt relates to the amount of liability, not the existence of liability." *U.S. v. Verdunn*, 89 F.3d 799, 802 (11th Cir.1996) (citations omitted); *In re Knight*, 55 F.3d 231, 235 (7th Cir.1995) ("If the amount of a claim has been ascertained or can readily be calculated, it is liquidated—whether contested or not." (citation omitted)); *In re Hammers*, 988 F.2d 32, 34 n. 1 (5th Cir.1993) (observing that the "determination [of a liquidated claim] is based only on liquidated debts regardless of whether they are disputed") (citing *In re Claypool*, 142 B.R. 753 (Bankr. E.D.Va.1990)); *Wenberg v. FDIC (In re Wenberg)*, 902 F.2d 768 (9th Cir.1990) (affirming decision and reasoning of Bankruptcy Appellate Panel, 94 B.R. 631, 633 (9th Cir. BAP 1988), which held that a debt is liquidated if its value is capable of ready compu-

---

**8.** *Hustwaite* is not good precedent because it overlooked binding contrary authority in the Ninth Circuit. *Wenberg v. FDIC (In re Wenberg)*, 902 F.2d 768 (9th Cir.1990).

**9.** *See, e.g. In re Monaco*, 36 B.R. 882 (Bankr. M.D.Fla.1983), overruled by *U.S. v. Verdunn*, 89 F.3d 799, 802 (11th Cir.1996); and *In re King*, 9 B.R. 376, 378 (Bankr.D.Or.1981), overruled by *Wenberg, supra* note 8. Since the amount of the claims were not ascertainable in these cases, these claims were unliquidated in any event, irrespective of whether the legal validity of the debt was in dispute. Thus, since it was not necessary for these courts to determine whether a liquidated debt must be certain in both amount and legal validity, these cases' assertions that a claim is not liquidated if it is uncertain as to liability are dicta.

In *United States v. May*, 211 B.R. 991 (M.D.Fla.1997), the debtor acknowledged owing $81,815 to the IRS. *Id.* at 993. But the IRS filed a proof of claim for $803,401.76. *Id.* So the issue there, too, was the *amount* of tax liability,

not whether there was liability. In explaining what it meant by "liquidated," the court stated that "courts have generally held that a debt is liquidated if its *amount* is readily and precisely determinable, where the claim is determinable by reference to an agreement or by simple computation." *d.* at 996 (emphasis added). Inexplicably, however, among the cases the court cited for this proposition were *Lambert* and *Hustwaite*, which, of course, held that for a claim to be liquidated, there must also be no dispute on liability.

Continuing, the court noted that "the bankruptcy court found it impossible to determine the [debtor's] liability with any precision or accuracy." *Id.* Although the court agreed with the IRS that "not every dispute by a debtor will cause the claim to become unliquidated," *id.* at 996–97, it held that this was just such a case because the IRS's "disputed debt was not certain as to amount or liability." *Id.* at 997. We believe, based on everything else in the opinion, that the "or liability" ending was no more than a slip of the pen, not entitled to weight on the question before us.

tation irrespective of whether actual liability on the claim is disputed);[10] *In re Vaughan,* 36 B.R. 935, 938 (N.D.Ala.), *aff'd* 741 F.2d 1383 (11th Cir.1984); *Loya,* 123 B.R. at 340–41; *In re Ekeke,* 198 B.R. 315, 317 (Bankr. E.D.Mo.1996); *In re Pennypacker,* 115 B.R. 504, 507 (Bankr.E.D.Pa.1990); *In re McGovern,* 122 B.R. 712, 715 (Bankr.N.D.Ind. 1989) ("Liquidation relates only to the amount of any liability. It does not concern the existence of liability itself."); *In re Pulliam,* 90 B.R. 241, 244–46 (Bankr.N.D.Tex. 1988). In sum, every circuit and nearly every other court required to decide the issue has held that a claim is liquidated if its value can be readily ascertained whether or not the debtor's underlying legal liability on that claim is in dispute.

The Sixth Circuit has not taken a position on this issue. In *Pearson,* the court had to decide whether the debtor's total unsecured, liquidated debts came within the chapter 13 eligibility requirements of § 109(e). The court explicated both the majority and minority viewpoints, but did not adopt either position. 773 F.2d at 754–55. Instead, the court held that the determination of eligibility should "primarily [be based] upon the debtor's schedules checking only to see if the schedules were made in good faith." *Id.* at 756. As a result, the definition of a liquidated claim remains unsettled in the Sixth Circuit. Consequently, before the Court decides which of the two definitions is correct, we will analyze the rationale underlying each theory.

For a number of reasons, *Lambert* is unpersuasive. One of the most significant is that *Lambert* was premised on the assump-

tion that the terms "claim" and "debt" have different meanings within the Bankruptcy Code. But Congressional intent was to the contrary: "The terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." S.Rep. No. 989, 95th Cong., 2d Sess. 23, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5809; H.R.Rep. No. 595, 95th Cong., 2d Sess. 310, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6267. Any lingering dispute over the matter was put to rest when the Supreme Court held that the terms "claim" and "debt" have the same meaning within the context of bankruptcy. *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 558–59, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990).

■ Second, *Lambert's* assertion that the terms "noncontingent," "liquidated" and "disputed" (undisputed?) have the same meaning within the context of § 109(e), 43 B.R. at 921, is also incorrect. It is a fundamental canon of statutory construction that, if possible, every word in a statute should be given meaning and effect. *United States v. Nordic Village Inc.,* 503 U.S. 30, 36, 112 S.Ct. 1011, 1015–16, 117 L.Ed.2d 181 (1992); *Moskal v. United States,* 498 U.S. 103, 109–10, 111 S.Ct. 461, 465–66, 112 L.Ed.2d 449 (1990); 2A *Sutherland Statutory Construction* § 46.06 (4th ed. 1991). And with the exception of *Lambert,* bankruptcy cases have been consistent in recognizing that these terms have distinct and separate meanings. *See, e.g., In re Lamar,* 111 B.R. 327, 329 (D.Nev. 1990); *In re Albano,* 55 B.R. 363, 365 (N.D.Ill.1985) (" '[L]iquidated,' 'contingent,' and 'disputed' refer to distinct concepts.");[11]

---

**10.** *See also In re Sloan,* No. 93–15074, 1994 WL 88612, at *1 (9th Cir. Mar.16, 1994) ("The mere fact that [the debtor] disputes the [creditor's] claim does not render it unliquidated. Rather, 'the question whether a debt is liquidated turns on whether it is subject to ready determination and precision in computation of the amount due.' ") (citations omitted); *In re Quintana,* 107 B.R. 234, 238 (9th Cir. BAP 1989), *aff'd on other grounds* 915 F.2d 513 (9th Cir.1990) (chapter 12— § 101(17) now § 101(18)); *In re Sylvester,* 19 B.R. 671, 673 (9th Cir. BAP 1982).

**11.** *Albano* contains a thorough discussion and comparison of these terms. Among its most salient points is that the terms have been used by

Congress since the Bankruptcy Act of 1898. The court traced the development of one provision of the 1898 Act—the section on involuntary bankruptcies—through its various amendments into the Bankruptcy Code and the 1984 amendments. It noted that in 1938, the provision read that an involuntary petition could be filed against a person by three or more creditors who have provable claims *"fixed as to liability* and *liquidated* as to amount."* 55 B.R. at 365 (citations omitted). When it concluded its review of the history of this provision the court stated: "That historical statutory development makes plain that, since at least 1938, bankruptcy parlance has connected the concept of ... liquidation with the notion of reduction to an ascertainable dollar amount."

*In re Sylvester,* 19 B.R. 671, 672–73 (9th Cir. BAP 1982) ("[T]he words *disputed, contingent,* and *unliquidated* have different meanings . . . .")

Third, *Lambert*'s conclusion that the omission of "disputed" and "undisputed" from § 109(e) is of no import is plainly wrong. Section 109(e) is written in a manner designed to limit the types of debt that can be applied toward calculating a debtor's eligibility for chapter 13. For instance, a debt may or may not be contingent. However, for purposes of § 109(e), the debt must be noncontingent for certain legal events to occur. Similarly, although it is possible for a debt to be either liquidated or unliquidated, it must be liquidated if it is going to be factored into the § 109(e) eligibility determination. Congress thus demonstrated that it can limit the type of debt to be considered in determining the chapter 13 debt limit. Had Congress intended to require further limitations, it could have stated that the debt must also be "undisputed."

█ But Congress did not do this. Instead, Congress omitted both "disputed" and "undisputed" from § 109(e). While not all omissions from a statute are deliberate or meaningful, if the terms of a statute "have discrete technical meaning . . . the maxim *expressio unius est exclusio alterius* may apply." *Muskin, Inc. v. Strippit, Inc. (In re Little Lake Indus., Inc.),* 158 B.R. 478, 482 (9th Cir. BAP 1993). This is "because the omission of one discrete term would imply that the omission should be understood as an exclusion." *Id.* The concepts of disputed and undisputed debts were known to Congress when § 109(e) was originally drafted inasmuch as the terms are used in the definition of "claim" under § 101(5). The terms "noncontingent," "liquidated", "disputed" and "un-

disputed" are all discrete terms with separate and distinct meanings. *See supra* pp. 357–358. It makes little sense to conclude that, after deliberately inserting "noncontingent" and "liquidated" into § 109(e), Congress simply forgot to consider whether or not to insert "undisputed" into the equation. Nor does it make sense to conclude that after deciding that each of these terms was important enough to be individually set forth in § 101(5), Congress then decided that the terms were so similar in meaning that it could just haphazardly drop a few of them into § 109(e) to the same effect as if it had inserted them all.[12] Not surprisingly, the overwhelming majority of courts have held that both "disputed" and "undisputed" debts can be included for purposes of determining chapter 13 eligibility. *See* 1 *Norton Bankruptcy Law and Practice* 2d § 18:12 at 18–43 (1997) (and cases cited therein).

█ Fourth, if the definition of "liquidated debt" were to be read so broadly as to subsume debts absolute in amount but questionable as to validity, the term "undisputed" would become meaningless within the context of § 101(5). This result would run afoul of another essential canon of statutory interpretation mandating that, if possible, "[a] statute should be construed so that . . . no part will be inoperative or superfluous." 2A *Sutherland Statutory Construction* § 46.06; *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Therefore limiting the terms "liquidated" and "undisputed" to their narrower definitions allows the Bankruptcy Code to be read not only in accordance with fundamental principles of statutory construction, but also with consistent meaning from one section to the next.

---

*Id.* at 366. The pedigree of this interpretation adds significant weight to the conclusion that liquidation refers to the amount, and not the validity, of a debt.

12. The absurdity of a contrary conclusion becomes even more glaring when one surveys the use of these terms throughout the Bankruptcy Code. Like § 109(e), §§ 101(18), 101(51 B) and 101(51 C) contain the terms "noncontingent" and "liquidated." Conversely, § 502(c) uses the terms "contingent" and "unliquidated," and

§§ 303(b) and 363(g) use the term "contingent." The term "contingent" is also used in § 502(b)(1), but so is the term "unmatured." Then, in §§ 502(b)(2) and (5) the term "unmatured" is used by itself. In our view, Congress knew what it was doing when it selectively placed these terms throughout the Bankruptcy Code. And it is further evidence that Congress intended each of these terms to have a distinct meaning that would dictate which term was appropriate.

Finally, restricting "liquidated" to the narrower definition means that bankruptcy law applies the term as it is commonly employed outside of bankruptcy. A "liquidated claim" has generally been defined as a "[c]laim, amount of which has been agreed on by parties to action or is fixed by operation of law." *Black's Law Dictionary* 930 (6th ed. 1990). Or stated differently, " '[a] claim which can be determined with exactness from parties' agreement or by arithmetical process or application of definite rules of law, without reliance on opinion or discretion." *Id.* Coextensively, a debt is considered liquidated "when it is certain what is due and how much is due. That which has been made certain as to amount due by agreement of the parties or by operation of law." *Id.* Similarly, an "unliquidated debt" is "[a]n obligation which has not been reduced to a specific money amount; also, there may by a bona fide dispute between the parties as to this undetermined amount." *Id.* at 1537.[13]

The law of accord and satisfaction generally defines a "liquidated claim" as "one which can be determined with exactness from the agreement between the parties, or by arithmetical process, or by the application of definite rules of law." 1 Am Jur 2d, *Accord and Satisfaction* § 7. Conversely, in that area of the law, "the term 'unliquidated' describes a claim about whose amount there exists a good faith dispute." *Id.* "Generally speaking, a claim is liquidated within the meaning of the setoff statutes where its amount has been determined or is capable of ascertainment by calculation or computation in connection with established market values or when the amount due has been fixed by law or agreed on by the parties." 20 Am Jur 2d, *Counter-*

*claim. Recoupment. etc.* § 22. With respect to the law of damages, "[a] claim for damages arising out of a personal injury is unliquidated in the sense that the defendant cannot know, prior to judgment, the precise amount he is going to be required to pay." 22 Am Jur 2d, *Damages* § 667.

Based on the above analysis, the Court rejects *Lambert.* The accepted definition of a "liquidated debt" is one that is readily ascertainable as to value. An "undisputed debt" is one that is certain as to its legal validity. We adhere to these distinctions, and hold that a claim is liquidated when its value is capable of ready ascertainment, irrespective of whether the validity of the claim is in dispute.

### Return to § 157(b)(2)(B)

The Court earlier held that claims-allowance involves determining both the validity and the value of a claim. No one has explained why Congress would use both "allowance" and "liquidation" in the same sentence unless it intended that they have different meanings. The Court therefore concludes that the terms "allowance or disallowance" and "liquidation" are not equivalent.

But neither are they completely separate and distinct, as *Standard Insulations* and *Chateaugay* maintained. Instead, "allowance" subsumes "liquidation," since the latter involves fixing the amount of a claim, but does not involve the determination of its validity. Hence, those aspects of the claims-allowance process of personal injury and wrongful death claims that are not part of the liquidation process are core proceedings that a bankruptcy court has the authority to hear and determine.[14]

---

13. Although Black's Law Dictionary also defined an unliquidated claim or demand as "[a] claim which has not been finally determined either as to liability or amount of damages." *Black's Law Dictionary* 1537 (6th ed. 1990), this definition cannot be relied upon for the following reasons. First, this definition directly contradicts *Black's Law Dictionary*'s definitions of "liquidated claim," "liquidated debt" and "unliquidated debt." Second, unlike the definitions that it contradicts, this broad definition of "unliquidated claim" is not supported with cites to any sources. Third, *Black's Law Dictionary* provides two additional definitions of "unliquidated claim,". both of which adhere to the more logical narrow

definition and both of which are supported: ."[u]nder the law of accord and satisfaction, a claim or debt will be regarded as unliquidated if it is in dispute as to the proper amount;" and "[f]or purposes of rule that prejudgment interest is allowed if a claim is liquidated but not if a claim is unliquidated, claim is 'unliquidated' when the amount of the damages cannot be computed except on conflicting evidence, inferences and interpretations." *Id.*

14. It may seem curious that Congress would make the kind of distinction described above. Why, after all, should extensive protection be afforded to the quantification of a tort creditor's

But then, what about 28 U.S.C. §§ 157(b)(5) and 1411(a)? These two provisions were enacted at the same time, and as part of the same act as § 157(b)(2)(B). And importantly, like § 157(b)(2)(B), both of these provisions address the treatment of personal injury and wrongful death claims in bankruptcy. Consequently, the three sections should be read in harmony if at all possible. *See Nixon v. Kent County*, 76 F.3d 1381, 1393 (6th Cir.1996) (Courts "must interpret the statute as a whole, making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous.") (quoting *Greenpeace, Inc. v. Waste Technologies Indus.*, 9 F.3d 1174, 1179 (6th Cir.1993)); 2A *Sutherland Statutory Construction* § 46.05 ("A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole.").

Section 1411(a) provides that bankruptcy does "not affect any right to trial by jury that an individual has under applicable non-bankruptcy law with regard to a personal injury or wrongful death tort claim." 28 U.S.C. § 1411(a). Section 157(b)(5) guarantees that when a personal injury or wrongful death claimant is entitled to a trial, the trial will be conducted by a district court. Of course, neither § 1411(a) nor § 157(b)(5) means that a personal injury claim must be tried. Even if a personal injury claim is transferred immediately to district court, the claimant may never get a trial. Summary judgment will serve to weed out those claims

which do not present a genuine issue of material fact, and for which the debtor is entitled to judgment as a matter of law. Consequently, the protections provided to a personal injury claimant in § 157(b)(5) and § 1411(a) are entirely procedural in nature. That is, if a personal injury claimant is entitled to the enumerated form of process—a trial—then these sections specify where that process is to take place—the district court.

Although the value of a personal injury claim can be mutually agreed upon through settlement, a judicial determination of such claim's value can only occur through trial. The sole intent of the exclusionary clause is to protect a personal injury claimant's right to trial if that right is shown to exist. Like § 157(b)(5) and § 1411(a), the protections provided in § 157(b)(2)(B) for personal injury tort claims are strictly procedural in nature, and come into play only when a right to trial is established. Therefore, when § 157(b)(2)(B) is interpreted as it is here, these three sections can be read in harmony with each other. The upshot then, is that the exclusionary clause bars a bankruptcy court from addressing only certain procedural aspects of the allowance or disallowance of personal injury and wrongful death claims. It does not limit a bankruptcy court's ability to address substantive issues if the procedural context for hearing and determining those issues is proper. The proper procedural context is one which is pretrial in nature.

Some courts have expressed concern over the fact that the disallowance of a claim at the pretrial phrase for procedural reasons also has the effect of preventing the holder of

claim, yet denied in large part to the even more critical question of whether the claim is legally valid? As suggested earlier, *supra* p. 349, the legislative history relating to the 1984 amendments is not particularly enlightening with respect to this rather basic question. It is possible that the apparent anomaly simply represents a legislative compromise between two competing and not-completely-reconcilable objectives: the expeditious administration of bankruptcy cases, on the one hand, versus the assurance that personal injury tort claims are afforded the same level of judicial scrutiny in bankruptcy as occurs in the non-bankruptcy context. More specifically, perhaps Congress was responding to the *Johns–Manville* bankruptcy, which witnessed the

wholesale valuation of hundreds of thousands of asbestos-related personal injury and wrongful death claims via the shortcut of estimation. *See In re Dow Corning Corp.*, 211 B.R. 545, 569 (Bankr.E.D.Mich.1997) (The estimation of the aggregate value of tort claims can have the backdoor effect of "estimation ... for purposes of distribution as well."). If this was the reason, then, by enacting 28 U.S.C. § 157(b)(2)(B),(O), § 157(b)(5) and § 1411, Congress must have hoped to protect against repetition of that scene without eviscerating a bankruptcy court's ability to discriminate between claims entitled to trial (which are then tried elsewhere) and those not entitled to trial (which are summarily disallowed).

such claim from participating in the distribution of estate assets. *Schepps Food Stores,* 169 B.R. at 377; *UNR,* 74 B.R. at 148. In the view of these courts, disallowance of a claim for any reason is equivalent to the liquidation of that claim.[15]

This reasoning is unpersuasive. To begin with, a personal injury claim listed in the schedules as disputed, belonging to a creditor with proper notice of the case who fails to file a proof of claim, will be disallowed. This is the case even though disallowance will have the actual effect of preventing that creditor from sharing in the distribution of the estate. The result is the same if the bankruptcy court disallows a claim for any number of procedural reasons, such as tardiness or lack of a signature.

In our view, such concerns demonstrate a basic misunderstanding of the interplay between different judicial processes. What these courts observed is the ripple effect that one judicial proceeding often has on a subsequent one. In a criminal case, for example, the granting of a motion to suppress may force the government to drop the charges against the defendant, enabling the defendant to go free. Though the effect is the same, the granting of a motion to suppress is not the same process through which a jury renders a verdict of not guilty. In a civil proceeding, a court may grant summary judgment for the defendant, which will serve as a final adjudication on the merits of the claim. The end result is no different than if a jury had found against the plaintiff at trial.

But a summary judgment hearing and a trial are not the same process.

The basis for the Debtor's Summary Judgment Motion which requests the Court to disallow all breast implant disease claims is that such claimants are not entitled to trials because they cannot present sufficient admissible evidence in support of their claims. "Summary judgment is a determination by the court concerning a case or an aspect of a case made prior to trial that obviates the need for trial of the matter. If a court grants summary judgment as to an entire case, it eliminates the need for trial entirely." 11 *Moore's Federal Practice,* § 56.02 (Matthew Bender 3d ed. 1997). Consequently, a summary judgment motion has only one effect from a procedural standpoint: it gives rise to a pre-trial hearing to determine the legal sufficiency of the evidence, which is not a trial and does not "liquidate" the claim. In fact, if a claim is disallowed on summary judgment, there is no longer a claim in existence to "liquidate."

Therefore this Court holds the Debtor's motion for summary judgment is a core proceeding which this Court may legally hear and determine.[16]

---

**15.** In *In re Schepps Food Stores, Inc.,* 169 B.R. 374, 377 n. 2 (Bankr.S.D.Tex.1994), however, the court stated that if the debtor's request had been based on a "provision[ ] of the Bankruptcy Code or Rules, such as missing a bar date," then such proceeding would be core and within bankruptcy court jurisdiction. This latter statement contradicts the court's contention that disallowance is tantamount to liquidation, for regardless of the basis for disallowing a claim, once a claim is disallowed the actual effect in nearly all cases is that the claimant receives nothing. *See In re Chateaugay Corp.,* 146 B.R. 339, 344 (S.D.N.Y. 1992) ("[I]t would be illogical for this Court to hold that bankruptcy courts can disallow personal injury ... claims so long as they do so on traditional bankruptcy grounds.").

**16.** In our prior opinion we acknowledged that "the liquidation or estimation of a personal inju-

ry or wrongful death claim for purposes of allowance and distribution is not a core proceeding." *Dow Corning,* 211 B.R. at 561. This statement is entirely consistent with the conclusion that allowance includes two functions: determining the validity of a claim and fixing its amount. If the bankruptcy court is unable to determine the validity of a personal injury claim as a matter of law then it will require a trial which the bankruptcy court is usually procedurally incapable of granting. *See id.* (suggesting that if the parties consent, the bankruptcy court can indeed preside over a plenary jury trial of the claim). The issue of whether "liquidation" is the equivalent of "allowance or disallowance" of claims in § 157(b)(2)(B) was not before the Court at that time and comment upon it was carefully avoided in recognition of the fact that it was pending before us in the present context.