**In re Ralph E. FAULHABER, Debtor.**

**No. HL 01–01309.**

United States Bankruptcy Court,
W.D. Michigan.

Nov. 7, 2001.

Eric C. Baumstark, Grand Ledge, MI, for Debtor.

Jonathan S. Groat, Lansing, MI, for Peter and Karen Ellsworth.

### OPINION RE: DEBTOR'S MOTION TO CONVERT TO CHAPTER 13 PROCEEDING

JEFFREY R. HUGHES, Bankruptcy Judge.

Debtor has filed a motion to convert his case from a Chapter 7 proceeding to a Chapter 13 proceeding. Peter and Karen Ellsworth (the "Ellsworths"), as well as other related parties, have objected to the motion. The court denies Debtor's motion for the reasons stated in this opinion.[1]

### I. BACKGROUND

On February 9, 2001, Debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*[2] Debtor filed his statement of financial affairs and attendant schedules on the same date. Debtor listed the Ellsworths as creditors in Schedule F (Creditors Holding Unsecured Non–Priority Claims). Debtor

indicated that the Ellsworths' claim was incurred in 1997 and that the consideration for the claim was "any and all obligation and/or liability with regard to lawsuit." He stated that the amount of the claim was $615,000. He did not check any of the three spaces marked "contingent," "unliquidated," or "disputed."

The lawsuit Debtor referenced in his description of the Ellsworths' claim had been filed by the Ellsworths in the United States District Court for the Eastern District of Michigan. According to the complaint filed in that lawsuit, Debtor had been the investment advisor retained by the Ellsworths to assist them in making management decisions concerning Mr. Ellsworth's retirement account. The Ellsworths allege that Debtor had caused the account to lose a substantial amount of its value. Among other things, they accuse Debtor of "churning" the account in violation of Security and Exchange Commission Rule 10b–5 so as to create excessive brokerage commissions for himself. They claim $615,000 as their damages. This is the same amount as Debtor listed in Schedule F.

Debtor did not answer the Ellsworths' district court complaint and a default was entered against Debtor. The Ellsworths filed a motion for entry of a default judgment against Debtor. However, Debtor's bankruptcy petition stayed the district court action before the district court could consider whether a default judgment should in fact be entered.

On June 6, 2001, Debtor filed his motion to convert to a Chapter 13 proceeding.[3]

---

1. The matter before the court is a core proceeding. 28 U.S.C. § 157(2)(A). This decision constitutes a final order of this court which is subject to appeal. 28 U.S.C. § 158. No evidentiary proofs were offered in connection with the motion. This opinion constitutes the court's conclusions of law. Fed. R. Bankr.P. 7052.

2. Unless otherwise indicated, all references to "Section _____" shall be to the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

3. Debtor's motion to convert may in part have been motivated by Ellsworths' commencement of a non-dischargeability action on May 29, 2001. The Ellsworths' complaint alleged

The motion was scheduled for hearing on August 9, 2001. On August 3, 2001, the Ellsworths filed an objection to Debtor's motion. The Ellsworths asserted that Debtor was ineligible for Chapter 13 relief because the unsecured claims against him exceeded the limits set in Section 109(e).

The parties agreed to adjourn the August 9, 2001 hearing to August 23, 2001 so that they might have an opportunity to discuss settlement. During this interval, Debtor twice amended the information contained in Schedule F concerning the Ellsworths' claim, first on August 10, 2001 and again on August 31, 2001. The first amendment changed the amount of the claim from "$615,000" to "unknown." The second amendment changed the description of the claim from "non-contingent, liquidated and undisputed" to "contingent, unliquidated and disputed."

The parties were not able to reach a settlement and the hearing was again adjourned to September 13, 2001 with instructions that both parties file supplementary briefs. Neither party offered argument at the September 13, 2001 hearing and the court took the matter under advisement. Each party has filed a post-hearing brief.

## II. *OPINION*

■ The Ellsworths argue that Debtor is bound by the disclosures made in his original Schedule F concerning their claim and that Debtor's subsequent efforts to amend those disclosures are irrelevant in determining whether Debtor is eligible for Chapter 13 relief. Debtor's original Schedule F listed the Ellsworths' claim as a non-contingent, liquidated, unsecured debt in the amount of $615,000. If only Debtor's original Schedule F is considered, Debtor would clearly be ineligible for Chapter 13 relief since the limit for unsecured debt which is both liquidated and non-contingent on the date that Debtor filed his petition was $269,250.[4]

The Ellsworths cite *In re Pearson*, 773 F.2d 751 (6th Cir.1985), in support of their position. The court in *Pearson* held that "chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith." *Id.* at 757. The Ellsworths argue that *Pearson* further requires that the court consider only the debtor's schedules as originally filed. Subsequent amendments are to be disregarded.

This court does not interpret *Pearson* so restrictively. The facts in *Pearson* are convoluted. The Pearsons were indebted to Comprehensive Accounting Corporation ("Comprehensive") on account of their guaranty of a corporate obligation to purchase an accounting practice from Comprehensive. The accounting practice acquired from Comprehensive secured the purchase obligation.[5] The corporation and the Pearsons defaulted on their obligations to Comprehensive and Comprehensive ultimately obtained an arbitration award

---

that their claim against Debtor was non-dischargeable under Sections 523(a)(2)(A), 523(a)(4) and 523(a)(6) of the Bankruptcy Code. While such claims are non-dischargeable in a Chapter 7 proceeding, they would be subject to discharge in a Chapter 13 proceeding. 11 U.S.C. § 1328(a).

4. The Bankruptcy Reform Act of 1994 requires that the eligibility limits for Chapter 13 be adjusted every three years, commencing April 1, 1998. The adjustment is based upon changes in the consumer price index. On April 1, 2001, the eligibility limit for non-contingent, liquidated debt increased from $269,250 to $290,525.

5. *Pearson* does not indicate whether the accounting practice purchased by the corporation secured only the corporate obligation or the Pearsons' guaranty as well.

against all of the parties in the amount of $127,450.12. The arbitration award further required the corporation to turnover to Comprehensive all of the assets comprising the accounting practice (*i.e.,* Comprehensive's collateral) if the corporation and the Pearsons did not pay the award within 30 days.

The Pearsons filed for Chapter 13 relief approximately three months after the arbitration award. The Pearsons initially scheduled the Comprehensive claim as both secured and unsecured. They scheduled each claim as unknown in amount and as in dispute. The *Pearson* opinion does not state whether the Pearsons also scheduled these claims as either contingent or unliquidated.[6]

The Pearsons amended their schedules approximately two months after they filed their petition. The amendment eliminated Comprehensive as a secured creditor and scheduled Comprehensive as having only an unsecured claim in the amount of the arbitration award, that being $127,450.12. It is unclear whether the Pearsons' amendment also listed the Comprehensive claim as either contingent or unliquidated. The amendment did indicate that the Pearsons reserved "the right to contest the validity and amount of any such claim." *Id.* at 752.

Comprehensive argued that the Pearsons' amendment to their schedules disqualified them from Chapter 13 relief because it elevated the Pearsons' unsecured liquidated and non-contingent claims above the $100,000 limit then in effect.[7] The bankruptcy court rejected this argument.

The apparent rationale for the bankruptcy court's decision was that the schedules filed at the time of the Pearsons' petition controlled and that those schedules indicated that the Pearsons were within the eligibility requirements of Section 109(e). Both the district court and the Sixth Circuit affirmed on the basis that the findings of the bankruptcy court were not erroneous. *Id.* at 758. In other words, both appellate courts ruled that it was within the bankruptcy court's discretion to determine debtor's eligibility based solely upon the Pearsons' original schedules. Conversely, both appellate courts implicitly held that it was in the discretion of the bankruptcy court to also consider any amendment the debtor may have made to the schedules.

■■■ *Pearson* clearly directs that a debtor's eligibility for Chapter 13 relief depends upon the amount of the debtor's liquidated and non-contingent debts as of the petition date and that the bankruptcy court should rely upon the debtor's good faith assessment of the amount of such debts as manifested in the bankruptcy schedules prepared by the debtor. However, *Pearson* does not mandate that the bankruptcy court's evaluation must be limited to only the schedules as originally filed. For example, if the debtor had mistakenly scheduled the amount of an unsecured judgment as $300,000 when in fact the amount of the judgment was only $30,000, the debtor should not be barred from amending the schedules to correct the mistake. Conversely, if it were later

---

6. The opinion suggests that the Pearsons' scheduled these claims as both non-contingent and liquidated. Nonetheless, the Pearsons appear to have argued that Comprehensive's unsecured claim was unliquidated because there was a substantial dispute at the time they filed their bankruptcy petition both as to their ultimate liability on the obligation and the allocation of the obligation as an unsecured and secured claim.

7. Pearsons filed their Chapter 13 case on March 18, 1983. At that time, the eligibility limit for unsecured liquidated and non-contingent debt was $100,000 and the limit for secured liquidated and non-contingent debt was $350,000.

discovered that the debtor had omitted a $300,000 unsecured judgment from her original schedules, the court should not ignore the debtor's duty to correct that error through an amendment to the original schedules before evaluating her eligibility.[8]

■ *Pearson* also prohibits the bankruptcy court from taking into consideration events which occurred subsequent to the petition date in evaluating the debtor's eligibility for Chapter 13 relief. For example, a debtor may schedule the amount of an unsecured and unliquidated claim against him for personal injuries as "unknown" because it was not readily ascertainable as of the bankruptcy petition date. It would be of no consequence to the debtor's chapter 13 eligibility if that claim were later reduced to a sum certain through, for example, the continuation of a state court proceeding after modification of the automatic stay.

In the instant case, there is no indication that a subsequent event prompted the two amendments which Debtor made to his schedules concerning the Ellsworths' claim. Instead, it appears that the Debtor simply attempted to restate the amount and character of the Ellsworths' claim in order to support his contention that the amount of the non-contingent and liquidated debts owed by him as of the date he filed his petition did not exceed the maximum amount set by Section 109(e). It is certainly appropriate for the Ellsworths to challenge these two amendments as not being good faith assessments by Debtor of their claim, especially given the fact that Debtor had originally scheduled their claim as liquidated and non-contingent in

the amount of $615,000. However, it is not appropriate for the Ellsworths to demand that the court ignore these two amendments out of hand. Therefore, the court rejects the Ellsworths' argument that Debtor should be denied relief under Chapter 13 on the basis that his original schedules constitute a binding admission that his non-contingent and liquidated unsecured claims exceed the $269,250 limit of Section 109(e).

■ The court must still determine whether Debtor is eligible for Chapter 13 relief in light of the arguments made by both Debtor and the Ellsworths concerning the amount and nature of the Ellsworths' claim. As already discussed, *Pearson* directs that this court accept the Debtor's characterization of the Ellsworths' claim as set forth in his schedules provided that Debtor's characterization has been made in good faith. Debtor's most recent attempt to schedule the Ellsworths' claim is set forth in the August 31, 2001 amendment to his schedules and it is this amendment which the court will evaluate. That amendment describes the Ellsworths' claim as being "contingent," "unliquidated," and "disputed" and as being "unknown" in amount. The court concludes that Debtor's characterization of the Ellsworths' claim in this fashion is not in good faith. Therefore, Debtor is ineligible for relief under Chapter 13.

This court begins its analysis by noting that *Pearson* offers very little in the way of guidance concerning how it is to determine whether the Ellsworths' claim is either contingent/non-contingent or liquidated/unliquidated. While *Pearson* discussed the competing theories concerning

---

8. The Bankruptcy Code sets no time limit within which a party in interest may object to the eligibility of a debtor to file for Chapter 13 relief. Therefore, the discovery of an unscheduled debt some time after the Chapter 13 proceeding has commenced may still precipitate a challenge to the debtor's eligibility. However, the challenge may be barred because of res judicata or because of the equitable doctrines of estoppel or laches.

when a claim becomes "liquidated," it ultimately did not have to choose. *Pearson,* 773 F.2d at 754–755.[9] *Pearson* also did not address what constitutes a noncontingent claim because the Pearsons conceded that issue.

■ This court concludes that the Ellsworths' claim against the Debtor is noncontingent.

> [I]t is well-settled that "a debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition." . . . Conversely, a contingent debt is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which *will trigger the liability of the debtor* to the alleged creditor."

*In re Redburn,* 193 B.R. 249, 259 (Bankr. W.D.Mich.1996) (citations omitted) (emphasis in original).

■ Debtor concedes that "all factual events surrounding Debtor's alleged misconduct occurred prior to the filing of Debtor's Chapter 7 bankruptcy petition." (Debtor's 8/31/01 Brief, p. 7). While Debtor argues that the Ellsworths' claim remains contingent because there has not been any judicial determination that Debtor engaged in the misconduct which Debtor adamantly denies, *Redburn* is quite clear that an actual determination of liability is not required to make the claim noncontingent.

■ The court also concludes that the Ellsworths' claim against Debtor is liquidated. Although not determinative, the Sixth Circuit in *Pearson* did conclude that the generally accepted definition of a liqui-

dated debt is a debt which is "readily ascertainable." *Pearson,* 773 F.2d at 754. The Ellsworths' claim for churning meets this definition.

■ A cause of action based upon churning consists of three elements, all of which must be present:

> 1) The broker must have exercised control over the customer's account;

> 2) There must have been excessive trading in the account in light of the customer's investment objective; and

> 3) The broker must have acted either with the intent to defraud or with willful and reckless disregard of the customer's interest.

*M & B Contracting Corporation v. Dale,* 795 F.2d 531, 533 (6th Cir.1986) (citing with approval *Arceneaux v. Merrill Lynch Pierce Fenner and Smith,* 767 F.2d 1498, 1501 (11th Cir.1985)).

■ Churning is not recognized as a distinct cause of action; rather, churning falls within the broader scope of activities which constitute securities violations under Security and Exchange Commission Rule 10b–5. *Nesbit v. McNeil,* 896 F.2d 380, 382 (9th Cir.1990) (citing *Mihara v. Dean Witter & Co., Inc.,* 619 F.2d 814, 820–21 (9th Cir.1980)).

■ The Sixth Circuit has ruled that the measure of damages for a Rule 10b–5 violation should be based upon an "out-of-pocket" analysis.

> The correct measure of damages arising under § 10(b)/Rule 10b–5 is generally held to be an "out-of-pocket" measure. By this is meant "the difference between the fair value of all that the [plaintiff] received and the fair value of what he

---

9. *Pearson* involved a partially secured claim. The determinative issue was whether the unsecured portion of that claim exceeded $100,000. The Sixth Circuit concluded that there was sufficient uncertainty as to what

might be realized from the liquidation of the collateral securing that claim to support a finding that the Pearsons' scheduling of the unsecured portion of Comprehensive's claim as unknown was made in good faith.

would have received had there been no fraudulent conduct."

*Stone v. Kirk,* 8 F.3d 1079, 1092 (6th Cir. 1993), citing *Randall v. Loftsgaarden,* 478 U.S. 647, 661–62, 106 S.Ct. 3143, 92 L.Ed.2d 525.

If the court accepts as true the Ellsworths' allegations concerning how and when Debtor churned the investments in the retirement account, then the Ellsworths' damages can be readily ascertained by comparing the available market prices for the securities in question on the relevant dates.

Debtor apparently does not contest the Ellsworths' assertion that the damages caused by Debtor's alleged churning of their account can be determined by utilizing the "out-of-pocket" measure. Instead, Debtor argues that the Ellsworths' claim cannot be readily ascertained because determination of the amount depends upon the court first resolving the hotly contested issue of whether Debtor actually churned the Ellsworths' account.

The Ellsworths and Debtor are essentially engaged in the same debate concerning liquidated and unliquidated debts which the Sixth Circuit discussed in *Pearson* but which it did not resolve. *Pearson,* 773 F.2d at 754–755. A significant number of opinions have been written concerning this debate subsequent to *Pearson.* The broad consensus among these courts is that the debtor's liability is irrelevant to the determination of whether a debt is liquidated or not. As Judge Spector observed in *In re Dow Corning Corp.,* 215 B.R. 346 (Bankr.E.D.Mich.1997), "every circuit and every other court required to decide the issue has held that a claim is liquidated if its value can be readily ascertained whether or not the debtor's underlying legal liability on that claim is in dispute." *Id.* at 357.

This court agrees with *Dow Corning* and the cases cited therein and concludes that a liquidated debt is any debt which is reasonably ascertainable as to amount regardless of whether the debtor's underlying liability is in dispute. This court does not share the concern expressed by Debtor that a definition of "liquidated" which includes debts that are subject to dispute will unfairly exclude debtors from Chapter 13 relief. Whether a debtor is eligible for Chapter 13 relief is a function of applying the mechanical standard set forth in Section 109(e). Congress left no room in Section 109(e) for the court to consider whether the application of the standard set in Section 109(e) will cause an unfair result. Eligibility under Chapter 13 is to be determined solely upon whether the amounts of certain categories of claims fall within specific monetary limits. This court cannot contort the accepted definitions for these categories of claims so as to achieve a result different than what Congress intended regardless of how unfair Debtor perceives that result to be.

The Sixth Circuit, in *Pearson,* offered a very practical approach to evaluating Chapter 13 eligibility. A bankruptcy court should not be expected to expend substantial resources determining eligibility for Chapter 13 relief any more than a district court should be expected to expend substantial resources to determine a plaintiff's eligibility in a federal action based upon diversity jurisdiction. The debtor's or plaintiff's own assessment concerning eligibility should be sufficient provided that the assessment is made in good faith.

In a diversity action, the plaintiff's assessment is set forth in the plaintiff's complaint. Unless the complaint on its face discloses to a legal certainty that the plaintiff cannot recover an amount exceeding the jurisdictional minimum, then jurisdiction will be recognized. It is irrelevant

whether other facts may call into question the plaintiff's ability to actually recover the amount claimed. It is equally irrelevant whether the facts have changed subsequent to the filing of the complaint such that it can later be determined to a legal certainty that the amount of the plaintiff's claim is below the jurisdictional minimum. The facts as they existed at the date of the complaint's filing control. *In re Pearson,* 773 F.2d at 756.

Similarly, in a Chapter 13 proceeding, the plaintiff's assessment of his or her eligibility is set forth in the schedules. If debtor's assessment as set forth in the schedules appear to be made in good faith, then no further inquiry is required of the bankruptcy court concerning debtor's eligibility. Nor is the bankruptcy court required to re-evaluate eligibility if the facts change such that a claim which could not be reasonably ascertained as of the petition date is later capable of being ascertained with certainty. *Id.* at 757.

The "good faith" test required by *Pearson* is simple to apply. The first step is to determine which of the claims against debtor are both non-contingent and liquidated. The debtor's designation of such claims on her schedules assist the court in making this determination. However, the debtor's designation is not conclusive. Practical considerations require the bankruptcy court to rely upon the debtor's good faith assessment of the amounts claimed by her creditors in assessing the debtor's eligibility for Chapter 13 relief. Given the debtor's need for immediate bankruptcy relief and the bankruptcy court's own limited resources, the court cannot afford to get mired in potentially long, drawn out factual disputes concerning the amount of a particular claim. However, determining whether a debt is contingent or non-contingent or liquidated or unliquidated does not

present the same problem. The issue is definitional, not factual. The court is perfectly capable of making these determinations expeditiously without having to rely upon the debtor's own assessment, whether made in good faith or not.

The second step is to determine whether the debtor has set forth the amount of each liquidated, non-contingent debt in good faith. It is certainly possible that the creditor and the debtor may honestly differ concerning the amount of a particular non-contingent, liquidated debt. *Pearson* offers one example, that being the instance where the claim is under-collateralized and the parties cannot agree as to what ultimately will be the unsecured deficiency after the collateral is liquidated. Another example is where the debtor and creditor have a legitimate dispute concerning the actual calculation of what is otherwise a readily ascertainable debt. The dispute might arise because of a disagreement concerning the number of payments the debtor has made or the propriety of applying a higher default rate.

To summarize, a debtor's eligibility for Chapter 13 relief is based in part upon the amount of her non-contingent, liquidated debts as of the date of her petition.[10] The court need not conduct an extensive inquiry to determine whether the debtor falls within the numerical parameters set by Section 109(e). The court may instead rely upon the debtor's own representation of these amounts as set forth in her schedules. The only proviso is that these schedules represent a good faith effort on the part of the debtor. This means that the debtor must make an honest effort to set forth the amount of each claim which is non-contingent and liqui-

---

10. The debtor must also be an individual with regular income.

dated.[11] If the debtor's schedules do not reflect such an effort, then debtor should be denied Chapter 13 relief.[12] There is no requirement that the court compensate for the debtor's lack of good faith by attempting to do the debtor's calculations for her.

Debtor's first amendment to his Schedule F restated the amount of the Ellsworths' claim from "$615,000" to "unknown" and Debtor's second amendment again stated the amount as "unknown." Debtor cannot in good faith maintain that the Ellsworths' claim is unknown. It is a readily ascertainable (*i.e.*, liquidated) debt which Debtor is capable of calculating. Since Debtor's current schedules have not been made in good faith, *Pearson* directs that the court exclude Debtor from Chapter 13 relief on that basis alone. The court is not required to make any further inquiry concerning Debtor's eligibility under Section 109(e).

### III. *CONCLUSION*

For the reasons stated in this opinion, Debtor's motion to convert this case to a Chapter 13 proceeding will be denied without prejudice. Debtor may, if he chooses, amend his schedules to reflect his good

faith assessment of the amount of the Ellsworths' claim and then re-file his motion to convert.[13]

---

11. As already discussed, the amount of the debtor's non-contingent and liquidated claim is the only element which is subject to debtor's good faith determination. Whether the claim is either non-contingent or liquidated are definitional matters which can be readily determined by the court. Therefore, deference to the debtor's good faith assessment of either of these two issues is not required.

12. A determination that the debtor is ineligible for Chapter 13 relief because the schedules evaluated by the court were not submitted in good faith does not necessarily mean that the debtor will be foreclosed altogether from the requested relief. It would, of course, remain within the bankruptcy court's discretion to postpone dismissal of the Chapter 13 so that the debtor may have the opportunity to amend her schedules so that they do in fact represent a good faith assessment of

the liquidated and non-contingent claims against her.

13. A separate ground may exist for denying any subsequent attempt by Debtor to convert this case to a Chapter 13 proceeding. Section 109(e) on its face appears to preclude "stockbrokers" from Chapter 13 relief even if they otherwise meet the eligibility requirements of Section 109(e). *See also*, 11 U.S.C. § 101(30). Debtor may be a "stockbroker" as that term is defined in the Bankruptcy Code. 11 U.S.C. § 101(53A). The Ellsworths did not raise this issue in their August 3, 2001 objection to Debtor's motion to convert and neither party has raised this issue in any of the ensuing arguments or submissions concerning that objection. Accordingly, the court makes no determination on this issue at this time.