**In the Matter of Gregory J. ROHL, Debtor.**

No. 02–52393.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Sept. 3, 2003.

96

Arnold S. Schafer, Bloomfield Hills, MI, for debtor.

James L. Fly, Orlando, FL, Daniel J. Henry, Jr., Esq., Fraser, MI, Daniel L. Price, Dearborn, MI, Kurt A. Steinke, Sterling Heights, MI, Thomas H. Stidham, Farmington Hills, MI, for creditor.

Charles D. Bullock, Esq., Southfield, MI, for trustee.

## OPINION AND ORDER DENYING DEBTOR'S MOTION TO CONVERT CASE TO CHAPTER 13

PHILLIP J. SHEFFERLY, Bankruptcy Judge.

This matter is before the Court on a motion filed by the Debtor, Gregory J. Rohl, seeking to convert this case from Chapter 7 to Chapter 13 of the Bankruptcy Code. For the reasons set forth in this Opinion and Order, the motion is denied.

### Procedural History

On May 23, 2002, the Debtor, Gregory J. Rohl, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On May 30, 2002, Sheila Solomon was appointed as the Chapter 7 Trustee. On June 14, 2002, the Debtor filed his schedules of assets and liabilities, and statement of financial affairs. On June 20, 2002, the § 341 first meeting of creditors was held. On July 16, 2002, the Trustee filed an objection to the exemptions claimed by the Debtor. On July 18, 2002, objections to exemptions were also filed by certain of the Debtor's creditors, including Phillip Warheit, Jerome Silver and Christine Lynn Morrison (collectively "the Creditors"). The objections to exemptions were originally scheduled for hearing on August 2, 2002. The Court file reflects that the hearing was adjourned several times thereafter upon agreement of the parties because of the need to take discovery as well as ongoing settlement discussions. On May 22, 2003, the Debtor filed a motion to convert the case from Chapter 7 to Chapter 13.

The Creditors each filed objections to the motion to convert to Chapter 13. Among other grounds, the Creditors alleged that the Debtor (i) was not eligible to be a debtor under Chapter 13 because he exceeded the debt limits set forth in § 109(e); (ii) was not eligible to be a debtor under Chapter 13 because he does not have regular income as required by § 109(e); (iii) should not be permitted to convert to Chapter 13 because the conversion was in bad faith as evidenced by the failure of the Debtor to disclose all of his assets in his schedules of assets and liabilities and statement of financial affairs; and (iv) should not be permitted to convert to Chapter 13 because of his refusal in bad faith to comply with various discovery requests made by the Chapter 7 Trustee. The Chapter 7 Trustee filed a more limited objection to the motion to convert to Chapter 13.

The hearing on the motion to convert and the objections filed by the Creditors and the Trustee was scheduled for June 18, 2003. The hearing was commenced at that time and continued as an evidentiary hearing on July 2, 2003 and July 9, 2003. Although the evidentiary hearing was scheduled to conclude on July 17, 2003, it was adjourned by agreement of the parties until August 28, 2003. The hearing on the motion to convert and the objections of the Creditors and the Trustee was concluded on August 28, 2003.

Three witnesses testified during the hearing. The Debtor was the only witness who testified in support of the motion. In support of the objections, the Creditors called two witnesses in addition to recalling the Debtor. One of the Creditors' witnesses was Heather Saroka, who is an employee of Billy Bob's Gameroom Furnishings. Ms. Saroka testified with re-

spect to the business records of that company as well as certain transactions with that company that the Creditors alleged the Debtor entered into for the purchase of recreational equipment. The Creditors also called John Dery as an expert witness. Mr. Dery is a certified public accountant, a certified fraud examiner, and an expert in the field of forensic accounting. Mr. Dery testified that he had reviewed some records of the Debtor, but had not reviewed sufficient records to enable him to render any opinions about the financial condition of the Debtor or his eligibility to be a debtor under Chapter 13. The Debtor testified regarding his occupation as a practicing attorney, income that he generates from that occupation, and both pre– and post-petition assets and liabilities.

The Debtor introduced and admitted into evidence two exhibits. Debtor's Exhibit "1" is a Settlement Agreement dated May 21, 2003 entered into by the Debtor with one of the creditors listed in his schedules, John F. Leone. The only other exhibit introduced by the Debtor and admitted into evidence was Debtor's Exhibit "5", which consisted of an Affirmation and Statement of Purpose Concerning Amendments to Schedule C and Statement of Financial Affairs Question 14, which was filed by the Debtor with the Court on July 2, 2003 for the purpose of amending the Debtor's schedules of assets and liabilities, and statement of financial affairs.

The Creditors introduced and admitted into evidence six exhibits. Creditors' Exhibit "A" is the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs filed in the Chapter 7 bankruptcy case on June 14, 2002. Creditors' Exhibit "B" is the Debtor's Affirmation and Statement of Purpose Concerning Amendment to Schedules C, F, and Matrix, filed with the Court on September 11, 2002. Creditors' Exhibit "C" consists of a partial transcript of the Debtor's § 341 hearing. Creditors' Exhibit "F" consists of the records obtained by the Creditors from Billy Bob's Gameroom Furnishings. Exhibit "G" is a separately marked sales contract obtained from the records of Billy Bob's Gameroom Furnishings. Creditors' Exhibit "I" is an August 18, 2003 letter sent by the Debtor to an attorney, Bruce T. Leitman.

The parties each gave closing arguments, and filed briefs regarding their respective legal positions.

### Discussion

Section 706(a) of the Bankruptcy Code provides that:

The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if this case has not been converted under section 1112, 1208, or 1307 of this title.

Section 706(d) places the following limitation on the debtor's right to convert under § 706(a):

Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

Section 109(e) of the Bankruptcy Code determines who may be a debtor under Chapter 13:

Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $290,525 and noncontingent, liquidated, secured debts of less than $871,550, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $290,525 and non-

contingent, liquidated, secured debts of less than $871,550 may be a debtor under chapter 13 of this title.

Although the Creditors concede that the Debtor is an individual, they allege that the Debtor owed, on the date of the filing of the petition, non-contingent, liquidated, unsecured debts of more than $290,525 and, therefore, is not eligible to be a debtor under Chapter 13 of the Bankruptcy Code. The Debtor argues that, with certain adjustments to his scheduled debts, he is within the debt limitations of § 109(e) and, therefore, is eligible to be a debtor under Chapter 13.

 The U.S. Court of Appeals for the Sixth Circuit in *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751 (6th Cir.1985) set forth certain principles for courts to apply to determine an individual's Chapter 13 eligibility. The starting point for the determination of eligibility is the debtor's own schedules: "[A] court should rely primarily upon the debtor's schedules checking only to see if the schedules were made in good faith ...." *Id.* at 757 (citation omitted). The court in *In re Faulhaber*, 269 B.R. 348 (Bankr.W.D.Mich.2001) clarified that the *Pearson* decision did not limit the inquiry to the debtor's schedules:

> *Pearson* clearly directs that a debtor's eligibility for Chapter 13 relief depends upon the amount of the debtor's liquidated and non-contingent debts as of the petition date and that the bankruptcy court should rely upon the debtor's good faith assessment of the amount of such debts as manifested in the bankruptcy schedules prepared by the debtor. However, *Pearson* does not mandate that the bankruptcy court's evaluation must be limited to only the schedules as originally filed.

*Id.* at 352.

It is appropriate then for this Court to consider both the Debtor's schedules themselves and other evidence to ascertain whether the Debtor's assessment of his debts in the schedules represents a good faith assessment. The schedules filed by the Debtor in this case (Creditors' Exhibit "A") on June 14, 2002, listed unsecured debts on Schedule F in the aggregate amount of $316,672.92. The amended schedules filed by the Debtor on September 11, 2002 (Creditors' Exhibit "B") made only one change to the listing of unsecured creditors on Schedule F: the addition of Michele Green as an unsecured creditor in the amount of $15,000. This brought the total of the unsecured debts listed on the amended Schedule F to $331,672.92.

The Debtor contended that although the aggregate amount of the unsecured debts set forth on his amended Schedule F (Creditors' Exhibit "B") exceeded the debt limitation set forth in § 109(e), certain of the debts should not be included for the purpose of calculating his eligibility under Chapter 13 because such debts were contingent, unliquidated or disputed. The Debtor also argued that certain of the debts, although perhaps owed at the time that he filed his Chapter 7 petition, were no longer owing because of events that had transpired since that date. The Debtor concluded that, as a consequence, those debts should not be considered for purposes of determining his eligibility for Chapter 13.

 Before reviewing the testimony of the Debtor, a threshold question arises as to when the Debtor's eligibility should be calculated. Section 109(e) speaks in terms of what an individual "owes, on the date of the filing of the petition ...." The petition date here was May 23, 2002. Despite the plain language of § 109(e), the Debtor asserts that the date of the motion to convert and not the petition date governs. The

Debtor's position is not supported by the language of the Bankruptcy Code or case law. To the contrary, § 348(a) of the Bankruptcy Code reads as follows:

> Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

Neither subsection (b) nor (c) of § 348 provide that the measuring date for Chapter 13 eligibility, as set forth by § 109(e), is somehow changed by the conversion of a case from Chapter 7 to Chapter 13. Therefore, as a threshold matter, the Court concludes that the assessment of the debts must be as of the original petition date of May 23, 2002.

■ The Debtor also contended that the Court should consider events subsequent to the petition date for purposes of evaluating the Debtor's eligibility under § 109(e). However, the Debtor's position has been considered and rejected by the *Pearson* court, as explained by the court in *Faulhaber.*

> *Pearson* also prohibits the bankruptcy court from taking into consideration events which occurred subsequent to the petition date in evaluating the debtor's eligibility for chapter 13 relief. For example, a debtor may schedule the amount of an unsecured and unliquidated claim against him for personal injuries as "unknown" because it was not readily ascertainable as of the bankruptcy petition date. It would be of no consequence to the debtor's chapter 13 eligibility if that claim were later reduced to a sum certain through, for example, the continuation of a state court

> proceeding after modification of the automatic stay.

*Faulhaber,* 269 B.R. at 353. Therefore, the Court's inquiry is limited to the status of the debts as of the petition date, and the Debtor's good faith assessment of those debts at that time.

The Debtor testified with respect to each of the unsecured debts listed on his Schedule F and amended Schedule F. Twelve separate unsecured debts were listed on the Debtor's amended Schedule F (Creditors' Exhibit "B"). They are as follows:

| | |
|---|---:|
| Banc One Acceptance Corp. | $ 3,490.10 |
| Bob DeGeorge, deceased, Ronald DeGeorge, Personal Representative | Unknown |
| Christine Lynn Morrison | Unknown |
| Goldfarb Bonding Agency | 4,998.50 |
| Michele Green | 15,000.00 |
| John Leone | 38,000.00 |
| MBNA Platinum Plus | 30,000.00 |
| Meadow Management | 8,912.84 |
| Phillip Warheit | 220,000.00 |
| Robert Davis | 5,011.20 |
| Rohl & Associates, PC | 0 |
| SmartLease by GMAC | 6,260.28 |
| Total | $331,672.92 |

Although the Debtor's amended Schedule F shows unsecured debts in excess of the statutory limit of $290,525 contained in § 109(e) of the Bankruptcy Code, the Debtor asserts that certain of these debts should be excluded from the calculation for eligibility purposes.

The Debtor testified with respect to each of these unsecured debts on his amended Schedule F as follows:

1. Banc One Acceptance Corp.: The Debtor testified that he believed this had been "resolved" because he had "negotiated a release" after the petition date and that "it did not seem to be a problem any more." However, no evidence was introduced to show that this debt was either contingent or unliquidated as of the petition date or that the Debtor in

good faith believed it was such as of the petition date.

2. Bob DeGeorge: The Debtor testified the Debtor's amended Schedule F shows this as an "unknown" amount. Debtor did not provide any testimony to show that it had somehow been liquidated since the date of petition.

3. Christine Lynn Morrison: Like the previous claim, this is set forth as "unknown" on the Debtor's amended Schedule F and the Debtor testified that there is no liquidated claim owing.

4. Goldfarb Bonding Agency: Although the Debtor's amended Schedule F does not indicate that this debt was contingent or unliquidated, the Debtor testified that he was "technically not a bankruptcy lawyer" but he was "told not to worry about it". No evidence was introduced to show that it was either contingent or unliquidated as of the petition date or that the Debtor in good faith believed it was such as of the petition date.

5. Michele Green: Amended Schedule F does not show this debt as either contingent or unliquidated. The Debtor testified that the debt was not "owing in my mind", because "she tried to extort money from me" but did not introduce any evidence to show that the debt was either contingent or unliquidated as of the petition date or that the Debtor in good faith believed it was such as of the petition date.

6. John Leone: This debt was listed on the Debtor's amended Schedule F as contingent, unliquidated and disputed. The Debtor testified that this was a judgment that had been rendered against him pre-petition for a mediation sanction. The Debtor also testified that the debt had been "resolved a month ago". The Debtor further testified that he had entered into a Settlement Agreement on May 21, 2003 (Debtor's Exhibit "1") that had enabled him to "settle" this claim in May, 2003 by payment of the sum of $5,000. The Debtor did not provide testimony to show that the Debtor believed in good faith that the debt was either contingent or unliquidated when the amended Schedule F was filed with the Court.

7. MBNA Platinum Plus: The Debtor's amended Schedule F does not reflect that this debt was either contingent or unliquidated as of the petition date. The Debtor acknowledged that the debt existed but testified that he "tried to pay it" after the bankruptcy was filed and that "I can buy it out for 25%". No testimony was produced to show that the Debtor in good faith believed that it was either contingent or unliquidated as of the petition date.

8. Meadow Management: This debt was not listed as either contingent or unliquidated on the Debtor's amended Schedule F. The Debtor testified that he has, however, entered a "new lease", and that he believes that he no longer owes this debt. No evidence was produced to show that the debt was either contingent or unliquidated as of the petition date or that the Debtor in good faith believed it was such as of the petition date.

9. Phillip Warheit: This debt was listed as contingent, unliquidated and disputed on the amended Schedule F filed by the Debtor. However, the Debtor testified that this was a

judgment that had been rendered in a state court against him pre-bankruptcy in the amount of $220,000. He further testified that the amount of the judgment was readily ascertainable. The Debtor testified that he disputed any liability for this judgment and that he had filed an appeal with the Michigan Court of Appeals after the entry of the judgment. The Court of Appeals affirmed the judgment but the Debtor testified that he had filed a motion for reconsideration with the Court of Appeals regarding its decision. There was no testimony to show that there was any contingency that had to take place as of the date of the petition before the amount of the judgment was required to be paid nor that the amount of the judgment was not readily ascertainable as of the date of the petition. The Debtor testified that he believed that he did not owe the money represented by the judgment and that the state court which had rendered the judgment had committed an error. That was the Debtor's sole explanation as to why he listed this debt as contingent and unliquidated.

10. Robert Davis: This debt was not listed as contingent or unliquidated on the Debtor's amended Schedule F. However, the Debtor testified that "I don't owe it." No testimony was adduced to show that it was either contingent or unliquidated as of the petition date or that the Debtor in good faith believed it was such as of the petition date.

11. Rohl & Associates, PC: The Debtor's amended Schedule F reflected this debt at zero.

12. SmartLease by GMAC: The Debtor's amended Schedule F does not show this debt as either contingent or unliquidated. The Debtor testified that he does not owe it but did not provide any testimony to show that it was either contingent or unliquidated as of the petition date or that the Debtor in good faith believed it was such as of the petition date.

In sum, the Debtor testified that five of the debts listed on his amended Schedule F (Creditors' Exhibit "B") had now been "resolved" based on actions that he had taken post-petition. Those debts are: Banc One Acceptance Corp., Goldfarb Bonding Agency, John Leone, Meadow Management, and SmartLease by GMAC. In addition, the Debtor testified that the three following debts listed on amended Schedule F are no longer "a problem" and were not "owing": Michele Green, MBNA Platinum Plus and Robert Davis. Finally, of those debts that were set forth in a specific liquidated amount on the Debtor's amended Schedule F, the Debtor testified that neither the John Leone debt nor the Phillip Warheit debt should be included for purposes of determining his eligibility for Chapter 13 because both of those debts were disputed by the Debtor as of the petition date. In both of those instances, the Debtor concedes that the amount of each of these debts is readily ascertainable because they were each set forth in pre-petition judgments against the Debtor. However, because the Debtor disputed his liability for each of these debts, notwithstanding the entry of such judgments, the Debtor now urges the Court to treat them as contingent because there were either pending appeals filed or to be filed with respect to each of these judgments as of the petition date.

█ If the Debtor's schedules and amended schedules were simply accepted on their face, the Debtor would have been

eligible for Chapter 13 on the date of filing his petition. Amended Schedule F (Creditors' Exhibit "B") shows a total of unsecured debts in the amount of $331,672.92. Of that sum, the Debtor designated the John Leone judgment of $38,000 and the Phillip Warheit judgment of $220,000 as contingent and unliquidated. Subtracting those two judgment amounts from the total of the unsecured debts set forth on amended Schedule F, the Debtor would have only $43,912.84 of unsecured debt, well within the limitations of § 109(e). However, after weighing the evidence in this case concerning the Debtor's good faith assessment of his debts, it is clear to the Court that the Debtor's amended Schedule F cannot be taken at face value for purposes of determining the Debtor's eligibility for Chapter 13 relief as of the petition date.

█ The only testimony that the Debtor could provide to show that the John Leone judgment of $38,000 and the Phillip Warheit judgment of $220,000 were contingent or unliquidated as of the petition date was his own testimony that he did not believe he owed those sums. Both of the sums were reduced to judgments against him pre-petition in amounts that he acknowledged were readily ascertainable from the face of each judgment. The Court concludes that the debts are not rendered either contingent or unliquidated simply because the Debtor had filed appeals of the judgments. In considering this issue, the Court is persuaded by the reasoning in *In re Dow Corning Corp.*, 215 B.R. 346 (Bankr.E.D.Mich.1997). The *Dow Corning* court discussed a split in authority as to whether a debt can be considered "unliquidated if there is a bona fide dispute as to the underlying liability of the debtor." *Id.* at 356–57. The court canvassed published opinions and concluded that "every circuit and nearly every other court re-quired to decide the issue has held that a claim is liquidated if its value can be readily ascertained whether or not the debtor's underlying legal liability on that claim is in dispute." *Id.* at 357 (noting that "[t]he Sixth Circuit has not taken a position on this issue") (citations omitted); *see also In re Faulhaber*, 269 B.R. at 355 (agreeing with *Dow Corning* "that a liquidated debt is any debt which is reasonably ascertainable as to amount regardless of whether the debtor's underlying liability is in dispute"). There simply is no evidence in the record from which the Court can conclude that the Debtor had a good faith reason to believe that either the John Leone judgment or the Phillip Warheit judgment were contingent or unliquidated in any way at the time that he filed his Chapter 7 petition and his amended Schedule F.

In reaching this conclusion, the Court considers it significant that the Debtor is an attorney who is very experienced in litigation matters. Both the John Leone claim and the Phillip Warheit claim were reduced to judgments rendered in writing against him pre-petition. The Court simply does not consider it plausible that the Debtor had a good faith belief that these sums were either contingent or unliquidated as of the date of his petition. The Debtor's belief that he may not have owed these sums, despite the entry of the judgments against him, may well have been sincere. However, a sincere dispute as to the existence of these liabilities does not by itself make either of these liabilities contingent or unliquidated. Nor does it enable the Debtor to formulate a good faith belief that either of these liabilities are contingent or unliquidated. After weighing all of the evidence, the Court concludes that the Debtor did not set forth the amount of each liquidated or non-contingent debt in good faith on his initial Schedule F (Creditors' Exhibit "A") or on his amended Schedule F (Creditors' Ex-

hibit "B"). Both the John Leone judgment of $38,000 and the Phillip Warheit judgment of $220,000 must be included in the calculation of the Debtor's non-contingent, liquidated debts as of the petition date.

 The Court also disregards the Debtor's testimony that various other debts listed on his Amended Schedule F either were "not owing" or had somehow been "settled" since the petition date. None of the debts shown in specific amounts other than the John Leone judgment or the Phillip Warheit judgment were designated as either contingent or unliquidated by the Debtor on either his original Schedule F (Creditors' Exhibit "A") or his Amended Schedule F (Creditors' Exhibit "B"). The Debtor's post-petition piecemeal attempts to "buy out" or "settle" those debts do not somehow retroactively make them contingent or unliquidated as of the petition date. The Court is unwilling to reward a debtor's post-petition efforts to gerrymander eligibility requirements by picking and choosing debts to somehow "settle" without any court supervision or process. Therefore, each of the debts set forth in specific amounts on the Debtor's Amended Schedule F should be included for purposes of calculating the aggregate amount of the Debtor's non-contingent, liquidated, unsecured debts on the petition date. With the inclusion of such debts, plus the John Leone judgment and the Phillip Warheit judgment, the Debtor exceeds the statutory limit imposed by § 109(e). Accordingly, the Court concludes that the Debtor is not eligible for Chapter 13 relief and therefore denies the motion to convert from Chapter 7 to Chapter 13.

The Creditors also maintained that the Debtor does not have regular income as required by § 109(e) and objected to the motion to convert on the grounds that the Debtor's right to convert under § 706(a) of the Bankruptcy Code is not absolute and can be denied where there is evidence of a lack of good faith. *See In re Brown* 293 B.R. 865 (Bankr.W.D.Mich.2003). The Creditors have asserted that there is a lack of good faith on the part of the Debtor because, *inter alia,* the Debtor failed to forthrightly and accurately disclose assets in this case, disclose income, and respond to various discovery requests. Because this Court concludes that the Debtor is not eligible to be a Debtor under Chapter 13 because he does not meet the debt limitations imposed by § 109(e) of the Bankruptcy Code, there is no reason to reach the other objections raised by the Creditors. For the reasons set forth in this Opinion,

IT IS HEREBY ORDERED that the Debtor's Motion to Convert from Chapter 7 to Chapter 13 be and hereby is denied.