**In re Chris HANSEN, Debtor.**

**Bankruptcy No. 02 B 33776.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 3, 2004.

Jeffrey Strange, Rod Radjenovich, Jeffrey Strange & Associates, Wilmette, IL, for Debtor.

Joel A. Schechter, Law Offices of Joel A. Schechter, Chicago, IL, for Trustee.

Joseph E. Cohen, Cohen & Krol, Chicago, IL, for Laura A. Hansen.

### MEMORANDUM OPINION AND ORDER

A. BENJAMIN GOLDGAR, Bankruptcy Judge.

Chris Hansen is a businessman who has been involved with several small oil companies. In September 2002, Hansen sought relief under chapter 7 of the Bankruptcy Code. After investigating Hansen's affairs for nine months, chapter 7 trustee Joel Schechter filed an adversary complaint objecting to Hansen's discharge pursuant to several subsections of section 727(a), 11 U.S.C. § 727(a). On March 25, 2004, the court set the adversary proceeding for trial.

Two weeks later, Hansen moved to convert his chapter 7 case to a case under chapter 13 pursuant to 11 U.S.C. § 706(a). The trustee objected, and on August 25, 2004, the court held an evidentiary hearing on the motion. For the reasons discussed below, Hansen's motion to convert to chapter 13 is denied.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). *In re Thornton,* 203 B.R. 648, 649 (Bankr.S.D.Ohio 1996) (stating that request to convert case is core).

### 2. Facts

The relevant evidence at the hearing, together with the facts stipulated by the parties, showed the following. Hansen filed his chapter 7 petition on September 4, 2002. On his Schedule F filed with the petition, Hansen listed $649,600 in unsecured, nonpriority claims. This included $78,600 owed to Hansen's ex-wife as part of a property settlement in their divorce. It also included $400,000 described as a "personal loan" from Virginia Gefvert, Hansen's mother. As Rule 1008 of the Bankruptcy Rules required, Hansen signed the schedules under oath, verifying that the information they contained was true and correct. The petition and schedules have never been amended.

Sometime after the filing of the petition and schedules, one of these debts, possibly both, was reduced. Hansen reached a settlement with his ex-wife that left about $12,000 due her. More important, Gefvert may have forgiven Hansen's $400,000 debt to her: she testified at the hearing that she did not need the money and did not intend to file a claim in the bankruptcy. There was even some suggestion in her testimony that she had never intended

Hansen to repay the $400,000 in the first place. Hansen admitted, however, that "[a]t the time we agreed I was to repay her." "Subsequent to that," he said, "to assist me in my financial difficulties, she's agreeing to waive that under the chapter 13 plan of reorganization, if we get to that point."

In the Statement of Financial Affairs accompanying his petition, Hansen listed no income for the two years preceding the bankruptcy. During that period, he worked for a small oil company, Alliance Petroleum, but the company had significant financial problems, and he received no salary or benefits. (He continued this unremunerative arrangement, he said, because his mother had made a sizeable investment in Alliance.) With no income to speak of, Hansen subsisted on small sums of money his mother loaned him. He also lived (and apparently is still living) with a woman, Nancy Vedral, who was employed and paid most of their bills.

At the hearing on the motion to convert, Hansen announced that he had just become vice president of something called "American Petroleum Company," a company that may be related to Alliance. He said that he was salaried at $1,000 per week, that he had just received his first paycheck, and that he expected his employment with the company, though only at-will, to continue.

### 3. Discussion

The trustee objects to Hansen's motion to convert the case on two grounds. First, he argues that section 706(a) does not give a chapter 7 debtor an absolute right to convert to chapter 13 but requires as a condition that the debtor seek to convert in good faith. Hansen, the trustee asserts, has not sought to convert in good faith. Second, the trustee argues that section 706(d) does not permit a debtor to convert a case to chapter 13 if he is not eligible for

that chapter. The trustee contends that Hansen is not eligible because he has too much unsecured debt and because he has no regular income.

■ The trustee's initial assertion—that section 706(a) does not provide an absolute right to convert—is incorrect. Section 706(a) declares that "[t]he debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." 11 U.S.C. § 706(a). The statute is clear on its face, and it imposes no conditions on a debtor's right to convert, other than that there have been no previous conversion of the case to chapter 7.

It is true, of course, that courts continue to be split on this question. *See In re Oblinger*, 288 B.R. 781, 784 (Bankr. N.D.Ohio 2003) (describing the split and citing cases). Many courts, most recently the court in *Copper v. Copper (In re Copper)*, 314 B.R. 628 (6th Cir. BAP 2004), have agreed with the trustee's position here, concluding that conversion can be denied if sought in bad faith. Employing the reasoning that usually underlies this conclusion, the court in *Copper* observed that if Congress had wanted to make conversion an absolute right, it would have said "shall be able to convert" in section 706(a), not "may convert." *Id.* at 636. The court added that the phrase "at any time" refers only to chronology and does not mean "regardless of circumstances." *Id.* at 637.

This reasoning is, to put it bluntly, a stretch. The word "may" in section 706(a) is permissive, as even *Copper* recognizes. *See id.* Section 706(a), then, gives a debtor the option to convert his chapter 7 case if he wants to. On the exercise of that option Congress has placed no restrictions, has imposed no conditions, has set forth no

qualifying tests or criteria. *Copper* identifies none. Asserting that the phrase "at any time" does not mean "regardless of circumstances," as *Copper* asserts, reverses the usual method of statutory interpretation. Certainly, section 706(a) does not say "regardless of circumstances." But the relevant question is not what the statute *fails* to say. The question is what it *does* say, and section 706(a) sets forth *no* circumstances (other than a prior conversion to chapter 7) under which conversion can be denied.

█ Decisions like *Copper* are exercises in judicial wishful thinking. It might well be a good thing if courts could examine the debtor's good faith in asking to convert his case from chapter 7 to chapter 13. But deciding what things are good and then enacting them into law is the job of Congress. If the Bankruptcy Code is clear, the court of appeals recently reminded us in *Kmart*, a bankruptcy court's task is to follow it, not rewrite it to suit the court's own personal notions of sound public policy. *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir.2004). Because section 706(a) is clear, the trustee in this case cannot erect barriers section 706(a) does not contain to block Hansen's attempt to convert. The trustee is limited to the objections the Code provides him.

█ One of those objections, however, is Hansen's lack of eligibility. As the trustee correctly notes, section 706(d) says that "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." 11 U.S.C. § 706(d). As the trustee also correctly notes, chapter 13 is available only to individuals who owe "noncontingent, liquidated, unsecured debts" of no more than a certain sum. 11 U.S.C. § 109(e). That sum changes every three years. 11 U.S.C. § 104(b). On September 4, 2002, when Hansen filed his petition, it

was $269,250. *See* Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(b) of the Code, 66 Fed.Reg. 10,910, 10,911 (Feb. 20, 2001).

Most courts, moreover, hold that what the debtor owes for purposes of section 109(e) is determined by the amounts in his schedules; other evidence is considered only to ensure that the schedules were prepared in good faith. *See, e.g., Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 982 (9th Cir.2001); *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 756 (6th Cir.1985); *In re Rohl*, 298 B.R. 95, 99–100 (Bankr. E.D.Mich.2003); *but see In re Hatzenbuehler*, 282 B.R. 828, 833 (Bankr.N.D.Tex. 2002) (disagreeing with *Scovis* and holding that extrinsic evidence may address the debtor's actual debt). Hansen therefore cannot convert to chapter 13 if his schedules show he had more than $269,250 in noncontingent, liquidated, unsecured debt as of the date of filing.

█ They do. Schedule F discloses that Hansen had $649,600 in unsecured debt, all of it liquidated and noncontingent. Hansen's $400,000 debt to his mother is enough standing alone to render him ineligible for chapter 13. Because he exceeds the debt limit in section 109(e), Hansen is not eligible to be a debtor under chapter 13. Under section 706(d), he is not entitled to convert his chapter 7 case to a chapter 13 case.

Hansen, though, argues that neither the $400,000 debt to his mother nor the $78,600 debt to his ex-wife should count. The $400,000 debt has been forgiven, he says, and the $78,600 debt has been reduced to $12,000. Therefore, his unsecured debt is really only $183,000, well within the debt limit for chapter 13.

■ The problem with Hansen's argument is that the $400,000 debt was forgiven and the $78,600 debt reduced only *after* the bankruptcy was filed. Section 109(e) states plainly that eligibility to proceed under chapter 13 depends on what the debtor owes "on the date of the filing of the petition." 11 U.S.C. § 109(e); *see also Scovis*, 249 F.3d 975 at 981 (9th Cir.2001); *In re Stairs*, 307 B.R. 698, 700–01 (Bankr. D.Colo.2004); *Rohl*, 298 B.R. at 99–100. Post-petition changes in what the debtor owes are therefore beside the point. *See Stairs*, 307 B.R. at 701 (denying request to convert because reduction in debtor's unsecured debt "was a post-petition event and not relevant to eligibility analysis"); *Rohl*, 298 B.R. at 100 (same); *see also Craig Corp. v. Albano (In re Albano)*, 55 B.R. 363, 368 (N.D.Ill.1985) (noting that post-petition changes to debt are irrelevant under section 109(e)).

*Hatzenbuehler*, the decision on which Hansen primarily relies, is no help to him. *Hatzenbuehler* does not hold that post-petition developments may make a debtor eligible for chapter 13 when he was not before. It holds that those developments can be considered "to the extent (and only to the extent) they shed light on the amount of secured and unsecured debt actually owed by the debtor *at the time of the filing of the petition.*" *Hatzenbuehler*, 282 B.R. at 833 (emphasis in original); *see also In re Sullivan*, 245 B.R. 416, 418–19 (N.D.Fla.1999) (concluding that bankruptcy court may "look past the schedules to other evidence of correct figures *as of the petition date*") (emphasis added); *In re Newman*, 259 B.R. 914, 917 (Bankr. M.D.Fla.2001) (same). *Hatzenbuehler*, in other words, merely rejects the majority view in *Scovis* that eligibility is determined strictly by what the schedules say.[1]

Hansen concedes all of this. He argues, however, that *Hatzenbuehler* at least allows the court to look beyond his schedules and find he never really owed his mother $400,000 because repayment of that sum was merely a "moral obligation."

*Hatzenbuehler* would permit that inquiry, true enough. But the court need not decide whether *Hatzenbuehler* represents the better approach because in this case looking beyond the schedules makes no difference. At the hearing on the motion to convert, Hansen admitted that repayment of the debt to his mother was more than a moral obligation: when he originally borrowed the money, he said, he and his mother "agreed" it would be repaid. He went on to admit that the debt was forgiven—if it was forgiven at all—only after he petitioned for relief under the Bankruptcy Code. To the extent Gefvert contradicted her son on this score, her testimony appeared expedient and incredible.

Because Hansen had noncontingent, liquidated, unsecured debt exceeding the statutory limit of $269,250 in effect on the date he filed his petition, he is not eligible to be a debtor under chapter 13.[2] His motion to convert the case must be denied.

---

**1.** Decisions where courts have taken this view, moreover, have typically involved a creditor contending that the case should be dismissed because the debtor's debts "exceed[ed] the statutory amounts" despite what the schedules said, *Newman*, 259 B.R. 914 at 917, not a debtor claiming eligibility for chapter 13 because his debts were overstated in his schedules. *See, e.g., Sullivan*, 245 B.R. at 418–19 (affirming dismissal of chapter 13 case based on debtor's ineligibility); *Lucoski v. I.R.S. (In re Lucoski)*, 126 B.R. 332, 334 (S.D.Ind.1991) (same); *Newman*, 259 B.R. at 921 (granted motion to dismiss chapter 13 case because of debtor's ineligibility).

**2.** Because the motion is denied on this ground, the court need not reach the trustee's other objection to Hansen's eligibility: that he lacks the requisite "regular income" under section 109(e). *See Rohl*, 298 B.R. at 104 (declining to reach argument that debtor

### 4. Conclusion

Debtor Chris Hansen's motion to convert to chapter 13 is denied.

lacked regular income where his unsecured debt exceeded the statutory limit).